Opinion issued August 9, 2007












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00956-CR






DERIC LESHA GODBOLT, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 997912






MEMORANDUM OPINION

 Appellant, Deric Lesha Godbolt, appeals from a judgment convicting him of
sexual assault. See Tex. Pen. Code Ann. § 22.011(a)(1) (Vernon Supp. 2006). 
Appellant pleaded not guilty to the jury. The jury found appellant guilty and
sentenced him to confinement for two and one-half years in prison. In his first two
issues, appellant asserts that the trial court erred by denying him the opportunity to
impeach the complainant with evidence that she had engaged in sexual relations prior
to the alleged offense, (1) in violation of the appellant's federal constitutional right
to confrontation and cross-examination and (2) to rebut or explain medical evidence
offered by the State. In his four remaining issues, appellant challenges the legal and
factual sufficiency of the evidence to sustain his conviction, contending that the State
failed to prove that the complainant submitted due to the use of force and that the
complainant's credibility was insufficient to support the jury's verdict. We conclude
the trial court's exclusion of the proffered evidence did not violate appellant's rights
under the confrontation clause and that appellant failed to preserve his contention that
the evidence was admissible to rebut scientific or medical evidence. We also
conclude that the evidence is legally and factually sufficient to sustain appellant's
conviction. We affirm.Background On December 30, 2003, the complainant, who at the time was 17 years of age, 
and her brother were visiting their mother at a two-bedroom apartment in La Porte,
Texas, that their mother shared with appellant, the complainant's step-father. The
family talked and listened to music until approximately one o'clock in the morning
of December 31, when the complainant went to bed. The complainant slept in one
of the bedrooms, appellant and the complainant's mother slept in the other bedroom,
and the complainant's brother slept on a pallette in the living room.

 At about two o'clock, the complainant awakened to the weight of appellant's
body on top of her. Appellant had unbuttoned the complainant's top and was kissing
her face. Appellant had started to touch the complainant's breasts when she told him
to stop, to leave her alone; appellant responded by placing his hand over her mouth
with sufficient force that she could no longer move her mouth. Appellant continued
to feel the complainant's breasts, then moved his hand into her shorts, rubbing her
vagina. The complainant testified that he touched her vagina with enough force that
"it burned and it stinged. It was like suffering, like misery." She stated that she could
have screamed, but didn't because she "didn't want to put my mom and my brother's
life in danger[.]" She attempted to tell him no while his hand was over her mouth,
and she was "squirming . . . kind of wiggling, trying to move." Appellant said that
it seemed like appellant's finger was in her vagina for five to ten minutes.

 After rubbing the complainant's vagina, appellant got up and removed his
shorts. Appellant put his finger to his mouth to indicate that the complainant should
stay silent. She did not say anything out of fear for her mother and brother. 
Appellant got back on top of the complainant, put his hand back over her mouth, and
rubbed his penis on her vagina. Appellant did not penetrate the complainant's vagina
with his penis. The complainant continued squirming to try to get him to stop. After
approximately ten to 15 minutes, appellant stopped and left the room. 

 The complainant waited a few minutes to make sure that appellant had gone to
bed, then went to the living room to call her father. She told her father what appellant
had done to her. The complainant's father told her to get her mother; as she was on
her way to do so, she saw appellant enter the living room and screamed. The
complainant's father heard the scream over the phone, and he and his wife went to get
the complainant at her mother's house. They took the complainant to the La Porte
police station, where she gave a report. The police referred her to Memorial Hermann
Hospital, where a nurse performed a sexual assault examination. The exam revealed
redness and abrasions to the complainant's vagina, perineum, and anus that were
consistent with the complainant's description of events. (1) The exam did not yield any
further physical evidence against appellant.

 At trial, the State presented testimony by:

  the complainant;


  the complainant's brother, who woke up when the complainant
screamed;


  the complainant's step-mother, who picked the complainant up
from the apartment after the assault;


  two La Porte police officers who interviewed the complainant;


  the nurse who examined the complainant after the assault; 


  a DNA analyst, who found no physical evidence that identified
appellant as the person who caused the complainant's injuries;
and


  the complainant's father, who testified in rebuttal about the nature
of his relationship with the complainant and the complainant's
mother, and about the phone call between himself and the
complainant on the morning of the incident.


 Appellant attempted to establish that the complainant's accusation was false,
and that someone else had caused the trauma to the complainant's genitals. The
complainant's maternal aunt, Jacqueline Jordan, with whom appellant was living at
the time of the trial, testified that two days after the alleged assault, the complainant
admitted that appellant never raped her, or even touched her in an inappropriate way. 
Jordan asserted that the complainant told her that she never said specifically who it
was that touched her on the morning of December 31, but only that "he touched
me[.]" She further stated that she had seen the complainant's brother touch the
complainant inappropriately before the alleged assault. Appellant also elicited
testimony from the complainant and her father about the complainant's boyfriend at
the time of the events in question, a man named Herbert Grant. 

 Appellant called his adult son, Devin Anderson, to testify about alleged past
sexual conduct on the part of the complainant, but the trial court ruled to exclude part
of his testimony after conducting a hearing outside the presence of the jury. 
Anderson's testimony outside the presence of the jury indicated that he had engaged
in foreplay with the complainant and that she had performed oral sex on him. 
Appellant's trial counsel argued that because the complainant had testified that she
had no previous sexual contact beyond a little kissing, Anderson's testimony was
relevant to attack her credibility and establish a motive and bias to lie. The
prosecuting attorney responded that the testimony did not establish any motive or
bias. The trial court ruled that the question that appellant's trial counsel had asked
the complainant--whether she had engaged in sexual conduct--was insufficiently
specific for her answer to be impeached by Anderson's testimony.

 Appellant's counsel asserted in his closing argument that the complainant's
boyfriend caused the injuries to the complainant, but that the complainant could not
accuse her boyfriend because her father would not believe her. Counsel contended
that the complainant would have seen appellant as a more believable perpetrator.

Prior Sexual Activity

 In his first two issues, appellant asserts that the trial court erred by denying him
the opportunity to impeach the complainant with evidence that she had engaged in
sexual relations prior to the alleged offense (1) in violation of the appellant's federal
constitutional right to confrontation and cross-examination and (2) to rebut or explain
medical evidence offered by the State. Appellant contends that the trial court erred
by excluding the testimony of his son, Devin Anderson, who would have testified that
he engaged in foreplay with the complainant and that she performed oral sex on him. 
After a hearing, the trial court concluded that the proposed evidence was not relevant,
and excluded that portion of Anderson's testimony. 

A. Confrontation Clause

 "[T]he Confrontation Clause occasionally may require the admissibility of
evidence that the Rules of Evidence would exclude." Lopez v. State, 18 S.W.3d 220,
225 (Tex. Crim. App. 2000). When evaluating a trial court's exclusion of evidence
against a confrontation clause challenge, we "must balance the probative value of the
evidence . . . against the risk its admission may entail." Id. at 222. Like Lopez, we
are presented with events that occurred, if at all, when appellant and the complainant
were alone, a "prototypical 'swearing match' . . . [where] there was a heightened
need" to impeach the complainant's credibility. Id. at 225. 

 Appellant cites to two statements by the complainant that she had not engaged
in prior sexual activity:

 Q. . . . Had you ever done that before with anyone consensually?


 A. Never. Never been touched.


 . . . .


 Q. Okay. You stated to the jury that you never had been involved in
any sexual relationship or behavior other than kissing before; am
I right?


 A. Yes, sir.


Appellant sought to impeach this testimony by introducing evidence that Anderson
and the complainant had engaged in foreplay and oral sex the summer before the
alleged assault. The trial court stated that the testimony was not relevant because the
questions that appellant asked the complainant were insufficiently specific.

 A criminal defendant's right to impeach witnesses against him is not unlimited; 
for example, witnesses generally may not be impeached regarding collateral matters. 
See Poole v. State, 974 S.W.2d 892, 905 (Tex. App.--Austin 1998, pet. ref'd) (citing
Ramirez v. State, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990)). A collateral matter
is one not relevant to a material issue in the case. Id.

 Appellant contends that the complainant's sexual relationship with Anderson,
or lack thereof, is not a collateral matter because it relates to the complainant's bias
or motive to fabricate. The sole evidence of motive or bias in the record is contained
in the testimony by Anderson that the trial court excluded. Appellant's trial counsel
asked Anderson "Do you think that [the complainant] had a reason or motive or bias
to lie on Deric in this case?" Anderson responded, "Oh, most definitely." Anderson
never stated what the complainant's motive or bias might be. The complainant's aunt
testified that the complainant admitted that she lied about appellant assaulting her, but
also stated that the complainant never said why she would have lied. In his brief to
this Court, appellant states that "[i]t was suggested at trial that the complainant was
concerned that her parents might discover that she had become sexually active."
Appellant's record citation in support of this statement refers to his trial counsel's
questioning of the complainant, in which the complainant denies each of counsel's
suggestions. Remarks by counsel are not evidence. Wells v. State, 730 S.W.2d 782,
786 (Tex. App.--Dallas 1987), pet. ref'd, 810 S.W.2d 179 (Tex. Crim. App. 1990). 
There is no evidence suggesting what the complainant's motive to lie about the attack
might be. Appellant "did not demonstrate a definite and logical link between the
complainant's past sexual conduct and the alleged motive and bias." Stephens v.
State, 978 S.W.2d 728, 735 (Tex. App.--Austin 1998, pet. ref'd).

 Appellant also appears to suggest that the issue of the complainant's sexual
history ceased to be a collateral matter once she gave the answers which he sought
to impeach. The complainant's statement under direct examination that she had
"never been touched" followed her testimony that appellant rubbed her genitals so
roughly that "[i]t was like suffering, like misery." It is apparent from the record that
the words "never been touched" referred to the specific act of which appellant was
found guilty. That statement did not open the door to testimony regarding alleged
prior foreplay or oral sex with Anderson, because it was not a denial of any such acts. 
The complainant's second statement that she had never engaged in sexual activity
beyond a little kissing was in response to cross-examination. A party cannot seek to
impeach a witness by eliciting a misleading statement on a collateral matter during
cross-examination. Poole, 974 S.W.2d at 905. Neither of the complainant's
statements rendered any prior sexual experience material to the charge against
appellant.

 We conclude that the complainant's sexual history is a collateral matter into
which appellant was not permitted to inquire. See Poole, 974 S.W.2d at 905. 
Evidence impeaching her on such a matter is therefore irrelevant, and has no
probative value against which this Court can balance the risk its admission would
entail. See Lopez, 18 S.W.3d at 225. We hold that the confrontation clause did not
require the admission of Anderson's testimony. We overrule appellant's first issue. (2)

B. Rebuttal of Scientific or Medical Evidence

 In his second issue, appellant contends that the excluded evidence from
Anderson was admissible under the Rules of Evidence to rebut or explain scientific
or medical evidence offered by the State. See Tex. R. Evid. 412(b)(2)(A). The State
contends that appellant did not present this contention to the trial court, and that it is
therefore waived. Although appellant raised other grounds for admission of the
evidence under Rule 412, he did not assert that the impeachment evidence was
necessary to rebut or explain scientific or medical evidence offered by the State. An
appellant waives a ground for appeal if that point is not raised before the trial court. 
See Martinez v. State, 17 S.W.3d 677, 682-83 (Tex. Crim. App. 2000) (citing Tex.
R. App. P. 33.1). Because rebuttal of scientific or medical evidence was not raised
before the trial court as a basis for the admission of Anderson's testimony, appellant
has not preserved this complaint for appeal. See id. at 683. We hold that appellant
has waived his contention that Rule 412(b)(2)(A) supports admission of Anderson's
testimony. We overrule appellant's second issue.

Sufficiency of the Evidence

 Appellant contends that the evidence is legally and factually insufficient to
sustain his conviction, asserting that the State failed to establish that the complainant
submitted to him due to his use of force against her, and that the complainant lacked 
credibility. 

A. Standards of Review

 In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness's
testimony. Id. In reviewing the evidence for legal sufficiency, we are required to
"defer to the jury's credibility and weight determinations." Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). 

 When conducting a factual-sufficiency review, we view all the evidence in a
neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.2d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. 
The jury is in the best position to evaluate the credibility of witnesses, and we are
required in our factual sufficiency review to afford "due deference" to the jury's
determinations. Marshall, 210 S.W.3d at 625.


B. Use of Force

 In his third and fourth issues, appellant contends that the State's evidence is
legally and factually insufficient to prove that appellant caused the complainant to
submit by the use of physical force and violence as alleged in the indictment. The
indictment charges that appellant,

 on or about DECEMBER 31, 2003, did then and there unlawfully,
intentionally and knowingly cause the penetration of the FEMALE
SEXUAL ORGAN of [the complainant] by placing HIS FINGER in the
FEMALE SEXUAL ORGAN of the Complainant, without the consent
of the Complainant, namely the Defendant compelled the Complainant
to submit and participate by the use of physical force and violence.


Appellant asserts that the complainant's testimony establishes that she submitted
because of "an understood threat to the complainant's mother and brother," and not
because of force and violence. 

 The complainant testified on two occasions regarding this threat. The matter
was first raised when the prosecuting attorney asked why the complainant did not
scream when appellant rubbed her vagina. She stated that she could have screamed,
but did not "[b]ecause I didn't want to put my mom and my brother's life in danger." 
Later, she said that she remained silent when appellant stood up to remove his shorts
"[b]ecause I was scared for my mom and my brother." 

 Viewing the evidence in a light most favorable to the jury's verdict, the
complainant's testimony described appellant as straddling her body and keeping his
weight on her. See Gonzales v. State, 2 S.W.3d 411, 415 (Tex. App.--San Antonio
1999, no pet.) (holding that lying on top of victim was sufficient force to support
conviction for sexual assault). The complainant's testimony further established that
appellant held her mouth closed with his hand. See id. ("There is no requirement that
a certain amount of force be used, only that it is used."). We conclude that a rational
jury could have found beyond a reasonable doubt that appellant "compelled the
Complainant to submit and participate by the use of physical force and violence" as
charged in the indictment. 

 In our factual sufficiency analysis, we note that appellant asserts that the
complainant's testimony establishes that she submitted because of "an understood
threat to the complainant's mother and brother." Although the record supports
appellant's claim that the complainant feared appellant due to the complainant's
understanding of threats to her family by appellant, that evidence does not undermine 
the evidence that appellant used force against the complainant by straddling her body,
keeping his weight on her, and holding her mouth closed, while he sexually assaulted
her. See id. Viewed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and manifestly unjust and the verdict is not against the great weight and
preponderance of the evidence. See Johnson, 23 S.W.3d at 11. 

 We hold that the evidence is legally and factually sufficient to support a finding
that the complainant did not consent to the penetration of her sexual organ by
appellant's finger. We overrule appellant's third and fourth issues.

C. Complainant's testimony

 In his fifth and sixth issues, appellant contends that evidence casts such doubt
on the complainant's credibility that her testimony is legally and factually insufficient
to support the jury's finding of guilt. 

 In reviewing the evidence for legal sufficiency, we are required to "defer to the
jury's credibility and weight determinations." Marshall, 210 S.W.3d at 625; see also
Margraves, 34 S.W.3d at 919. Appellant's assertion that the complainant's trial
testimony is not credible is irrelevant to a legal sufficiency challenge, which requires
that we view the evidence in a light most favorable to the jury's verdict. See id. We
hold that the evidence is legally sufficient. We overrule appellant's fifth issue.

 In his factual sufficiency challenge, appellant challenges the complainant's
credibility by pointing to the evidence from Anderson that we have already held was
properly excluded by the trial court and that we therefore may not consider in this
appeal. See Kemmerer v. State, 113 S.W.3d 513, 515 n.2 (Tex. App.--Houston [1st
Dist.] 2003, pet. ref'd) (citing Miles v. State, 918 S.W.2d 511, 512 (Tex. Crim. App.
1996)) (stating that appellate court "must review the factual sufficiency of the
evidence from the same perspective as did the jurors" and may not consider evidence
not admitted at trial). Appellant also points to inconsistencies in the complainant's
descriptions of the assault. Although the record supports appellant's claims that there
are minor inconsistencies concerning the complainant's description of the assault, the
record also shows that immediately after appellant sexually assaulted her, she
telephoned her father to report the abuse by appellant, while she was still in
appellant's apartment. Circumstances such as the immediate outcry and the medical
evidence that showed redness in her female genital area that was consistent with her
accounting of the events support the jury's implied determination that the
complainant was credible. We cannot conclude that minor inconsistencies in the
complainant's description of events are sufficient to undermine her credibility so as
to render the evidence factually insufficient, under these circumstances that include
an immediate outcry and medical evidence that is consistent with her version of the
events. See Marshall, 210 S.W.3d at 625 (citing Watson, 204 S.W.3d at 416-17;
Johnson, 23 S.W.3d at 9). 

 Viewed in a neutral light, the jury's verdict is neither clearly wrong nor
manifestly unjust, nor is it against the great weight and preponderance of the
evidence. We hold that the evidence is factually sufficient. We overrule appellant's
sixth issue.


Conclusion

 We affirm the judgment of the trial court. 



 Elsa Alcala

 Justice


Panel consists of Justices Alcala, Hanks, and Price. (3)


Do not publish. Tex. R. App. P. 47.2(b).
1. At trial, appellant pointed out that the complainant never said that appellant rubbed
her anus, and that in fact she stated that appellant rubbed the upper part of her vagina.
The nurse who performed the exam testified at trial that redness to the anus is not
inconsistent with the complainant's description of a prolonged rubbing of the female
sexual organ.
2. The State asserts that appellant failed to preserve error on confrontation clause
grounds by not raising the matter before the trial court. Our review of the record
shows that the appellant explicitly raised the Confrontation Clause as grounds for
admission of the evidence.
3. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of
Texas at Houston, sitting by assignment.