COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HENRY RAMOS, | § | No. 08-10-00338-CR |
| Appellant, | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court Number One |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20080D05827) |

**O P I N I O N**

Henry Ramos ("Appellant") appeals his convictions for aggravated kidnapping, a first-degree felony, and sexual assault, a second-degree felony. Appellant brings three issues: (1) that the trial court erred in allowing extraneous evidence of another kidnapping and sexual assault; (2) error in failing to include Appellant's lesser-included-offense instruction of assault; and (3) error in refusing to instruct on the mitigation defense of leaving the victim in a safe place. For the reasons that follow, we affirm.

**PROCEDURAL BACKGROUND**

Appellant was indicted on one count of aggravated kidnapping and one count of sexual assault and entered a plea of not guilty on October 25, 2010. The jury found Appellant guilty of both charges following a four-day trial. The jury assessed his punishment at 30 years confinement for aggravated kidnapping and 20 years for sexual assault. The trial court imposed sentence in accordance with the verdict and ordered the sentences to run concurrently. Appellant timely appealed.

**FACTUAL BACKGROUND**

On the night of August 14, 2007, Zarya Mendoza, the complainant ("Zarya"), met with

friends at the Black Market Bar in the Cincinnati District in El Paso. Zarya also invited Appellant, a friend and former neighbor she had previously dated in 2005. Zarya testified that she had lunch with Appellant and visited with him at his house earlier in the day but that there had been no romance or physical intimacy between them and that they were not dating in August of 2007.

During the course of the evening, Appellant became angry at Zarya for not paying more attention to him and began yelling at her and making a scene. Zarya, embarrassed by these actions, left the Black Market with one of her female friends and Appellant, who followed them, and they all went to the O2 lounge, where Zarya ran into her ex-boyfriend (now fiancé) Ivan. When Appellant, who was fairly drunk at that point, saw Zarya and Ivan speaking, he became "pretty angry and violent," started shouting, and grabbed Zarya by both arms and pulled her aside. Zarya decided to leave and Appellant left with her. Zarya stopped at a taco stand because Appellant was very drunk at that point, and helped Appellant walk as she continued to walk towards her own car. She refused to drive Appellant home when he asked, saying she was upset and afraid to drive with him. Appellant persisted in trying to make Zarya feel guilty about not driving him home, which Zarya felt was an attempt to manipulate her into getting into the same car with Appellant. After her refusal, Appellant began shouting at her, in addition to shouting at other people looking at them, at which point Zarya dropped the tacos she had purchased, got into her car and drove away.

Appellant made numerous phone calls (approximately fifteen) to Zarya while she was driving home. Zarya answered one of these calls and Appellant asked her where she was, told her that they needed to talk, said that he was sorry, and that he wanted to talk to her in person. Zarya, feeling tired and afraid, told Appellant that she was going to a friend's house, hoping that he would not think she was at her home.

2

When Zarya pulled into the driveway of her house and opened her car door, Appellant came up from behind her, called her a liar, grabbed her around her neck in a choke-hold, and dragged her out of her car and towards his truck, which was parked in a dark area down the street. Zarya pressed the panic button on her car keys twice to no effect before Appellant grabbed them out of her hand. She continued struggling, falling several times, and at one point, Appellant stopped and confronted her about Ivan, saying she should call Ivan for help. Appellant then forced Zarya into his truck and drove off, holding her by the neck and pinning her head against the passenger-side window. Appellant drove until he reached an undeveloped desert area at the end of Redd Road where construction crews had just started leveling the ground for new construction. At this point, Zarya believed she was going to be left to die.

Appellant told Zarya she was a bitch and a whore, that he was "just going to fuck her and get it over with," and that he was not worried about getting in trouble because his parents had money. Appellant then reached between her legs and ripped the crotch of her shorts open and, as she was not wearing any underwear, she was completely exposed. Zarya testified that after Appellant ripped her shorts he penetrated her vagina with his hand. Appellant then got out of the truck and pulled Zarya across the bench seat of the truck where he began hitting her, punching her at least once in the head. Appellant pulled her out of the truck, causing her to fall on the ground. Appellant then tried taking off her blouse, which ended up covering her face so that she could not see. After knocking her down repeatedly, Zarya was forced to pull her blouse off so that she could see.[1]

Appellant placed Zarya onto the bed of his truck, forced her legs apart, and again

---

[1] Zarya testified that she could not recall how her bra had been removed during the struggle, but recalled that she did not remove it voluntarily. Officers who subsequently searched the area found her blouse and bra, which were tangled together.

penetrated her vagina with his hand. Appellant unzipped his pants and began fondling himself, then pulled Zarya out of the truck bed, causing her to fall on the ground. While she was laying on the ground, Appellant began fondling himself again and Zarya ran away and hid in a darker area of the desert, behind a mound of dirt, until Appellant left.

After Appellant left, Zarya ran towards the nearest residential area, wearing nothing but "shorts that were now basically a skirt." She began ringing the doorbells of houses that she thought might be occupied while trying to remain hidden from Appellant, who she saw driving up and down the streets of the neighborhood. At trial, Paul Rosales testified that after he was woken by the sound of his doorbell, he saw, through the front door glass, a young girl (identified as Zarya) standing outside frantically waving her arms. She gave him her name and address, told him that she was naked, that she thought she had been or almost had been raped, and asked if he could toss her a shirt from his balcony. Rosales ran to get a shirt while his wife called 911, but when he returned, Zarya was gone. Zarya testified that when Rosales responded to the doorbell that she yelled her name and her parent's phone number through the closed door, told him that she had been raped, and asked that he call the police. She further testified that while she waited, she began worrying what her parents would think about what happened and began debating whether to get clothes from a friend and return home without telling her parents what happened. Zarya covered herself with a piece of carpet she found and left to walk home. Though she saw several police cars canvassing the area, she felt conflicted about alerting them to her presence.

While on her way home, Zarya stopped and, in order to hide and rest, got into a car that belonged to a friend and that Zarya knew would be unlocked. Using a beach towel she found in the car to cover herself, she continued home. As she got closer to home she was forced to hide and take a long detour because she saw Appellant's truck parked on the road near her home.

4

When she arrived home the police were already there and Zarya gave a statement and was examined for evidence.

In the meantime, Zarya's father, Hector Mendoza, was awoken by Zarya's mother who heard Zarya's car alarm going off. Looking out the window, Hector saw Zarya's car in the driveway and assumed she was still inside, however when she did not come inside the house he went out to check on her. When he saw that Zarya was not in the car, but that her purse and cell phone were, he became worried and went back into the house where he called one of her friends to try and locate her. As Hector looked out of the window again towards the car, he noticed that the door was wide open, which was not how he had left it. Hector went outside, thinking that Zarya had come home, but instead found Appellant rummaging through the car. Hector asked Appellant what he was doing at which point Appellant charged at Hector and, following a struggle, Hector restrained Appellant on the ground until the police arrived.

After a police officer arrived at the house and separated Hector and Appellant, the officer handcuffed Appellant and when the officer reached into Appellant's back pocket to retrieve his identification (with Appellant's permission) the officer found Zarya's identification in Appellant's pocket as well. While the officer was waiting for the crime-scene unit to arrive to process Zarya's car in relation to the burglary, Zarya arrived on foot, wearing a towel.

At trial, the court considered the State's intent to introduce extraneous offenses, including an unadjudicated extraneous offense which occurred in 2008. After determining that two of the events would be highly prejudicial, the court allowed the State to introduce only the 2008 offense for the "limited purpose of intent." The court gave a limiting instruction to the jury prior to the testimony about the 2008 offense.

Testimony about the 2008 offense was presented by Macee Robinet ("Macee") regarding a

kidnapping and sexual assault committed by Appellant against Macee. Macee testified that on August 20, 2008, Appellant, who was angry with her for ignoring his phone calls, came to her house. When she told Appellant that she no longer wanted to be in a relationship with him, he grabbed her by her arm, took her outside, and forced her into his car. While in the car, Appellant grabbed her face hard enough to cause bruising and slapped her. Appellant ultimately drove them to his house while telling Macee she was a "shitty girlfriend" who was probably cheating on him. When they arrived at his house, he hid all the phones in the house, took her to his bedroom, threw her on the bed, and told her he was going to "fuck [her] like the slut that [she] was." Appellant then ripped off her underwear and penetrated her vagina with his fingers. Macee testified that she was kicking Appellant hard enough so that he could not penetrate her with his penis and that at that point he "snapped out of it." Appellant told her they could no longer be in a relationship anymore because of what he had done to her. Because she was in shock and still loved Appellant, Macee accompanied him outside to share a cigarette and told him that everything would be okay.

## DISCUSSION

Appellant presents three issues, seeking to have this Court sustain his points of error, reverse the judgment of the trial court, and render a judgment of acquittal or remand the case for a new trial or new punishment trial.

### I.    Error in allowing extraneous evidence

Appellant's first issue asserts that the trial court erred by allowing evidence of the 2008 kidnap and sexual assault of Macee Robinet during the guilt-innocence phase of the trial, because such evidence is inadmissible extraneous-offense evidence under Rule 404(b) and was unduly prejudicial under Rule 403 of the Texas Rules of Evidence.

The general rule is that the defendant is to be tried only for the offense charged and not for

6

any other crimes or for being a criminal generally. *Segundo v. State,* 270 S.W.3d 79, 87 (Tex.Crim.App. 2008). Evidence of other wrongful acts is not admissible to prove the character of the person to establish that he acted accordingly regarding the alleged offense. TEX.R.EVID. 404(b); *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). Evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect.[2] *Segundo*, 270 S.W.3d at 87; *Craft v. State*, 08-10-00107-CR, 2012 WL 112527, *5 (Tex.App.--El Paso Jan. 11 2012, no pet. h.)(not designated for publication)(same). Evidence of extraneous offenses may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b); *Craft*, 2012 WL 112527, *5. Rebuttal of a defensive theory is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b). *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003). This exception includes defenses based on a claim of fabrication, retaliation, or lack of opportunity. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(extraneous-offense evidence admissible for the noncharacter-conformity purpose of rebutting defendant's defensive theory that complainant fabricated allegations against him).

In determining admissibility of extraneous offenses, the trial court must first determine whether the evidence is relevant for a purpose other than to show conformity of conduct. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App. 1991)(opinion on reh'g); TEX.R.EVID. 404(b). After determining relevance, the court must then assure itself that the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Crank v.*

---

[2] Relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401.

*State*, 761 S.W.2d 328, 342 & n.5 (Tex.Crim.App.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1988); TEX.R. EVID. 403. We review the trial court's admission of extraneous offense evidence under Rule 404(b) or over a Rule 403 objection for an abuse of discretion. *See De La Paz v. State,* 279 S.W.3d 336, 343 (Tex.Crim.App. 2009). A trial court abuses its discretion only when its decision lies outside "the 'zone of reasonable disagreement.'" *Id*. at 343-44.

As noted above, Rule 404(b) allows for admission of extraneous offenses for the purposes of rebutting a defensive theory of fabrication. *See Bass*, 270 S.W.3d at 563; *Theragood v. State*, 08-10-00013-CR, 2011 WL 3848840, *7 (Tex.App.--El Paso Aug. 31, 2011, no pet.)(not designated for publication). A defense opening statement opens the door to the admission of extraneous offense testimony to rebut the defensive theory presented in the defense opening statement. *Bass*, 270 S.W.3d at 563.

Appellant argues that he did not make "intent" an issue and that the trial court erred in allowing the extraneous offense testimony because it was not relevant and, even if it was relevant, its prejudicial effect outweighed its probative value. Appellant argues that because "the complainant testified that she either voluntarily went into the truck or was forced into the truck, taken to a construction site about a mile from her house, assaulted and penetrated against her will" that the element of intent was "readily inferred from uncontested direct evidence."

The record is clear that Appellant's defensive theory, which commenced in the opening statement, was that Zarya voluntarily got into his truck and engaged in some form of consensual sexual activity and later fabricated the sexual assault and kidnapping because she was "obsessed" with him and angry that he kissed another woman. Counsel for Appellant cross-examined Zarya on the nature of her relationship with Appellant and whether it was sexual; whether she had anger

8

issues; whether she was "obsessed" with Appellant; whether she had seen Appellant kissing another woman; the extent of her injuries and whether they were consistent with her accounting of events; whether her sexual assault examination reflected injuries to her vaginal area; why she appeared to have no injury to her neck after being placed in a choke-hold; and additional cross-examination relating to her injuries and actions.

The record reflects, contrary to Appellant's assertion that it was the State who made "intent" an issue, that Appellant raised the defensive theory that Zarya entered Appellant's truck voluntarily and engaged in a consensual sex act, thus placing Appellant's intent at issue. *See Armstrong v. State*, 03-02-00211-CR, 2003 WL 21189756, *7-9 (Tex.App.--Austin May 22, 2003, no pet.)(mem. op., not designated for publication)(holding that appellant, through cross-examination of complainant, constructed defensive theory that complainant had engaged in consensual sex and fabricated kidnapping and sexual-assault allegations to gain advantage in divorce proceedings, that appellant disputed his intent to engage in alleged sexual conduct and restrain complainant's movements without her consent, placing his intent at issue).

Appellant also argues that the two offenses are dissimilar enough to disfavor admitting the extraneous offense to the jury. Specifically, that while the complainant in the instant case was penetrated by Appellant at a construction site a mile from her house, that the complainant in the extraneous offense was taken by Appellant to his house, where he penetrated her in his bedroom after which they smoked a cigarette.

We disagree. The law in Texas is clear that a high degree of similarity is not required when the purpose of admitting evidence of extraneous offenses is to show intent, and that high degree of similarities are required primarily where identity is an issue. *See Plante v. State*, 692 S.W.2d 487, 493 (Tex.Crim.App. 1985); *Cantrell v. State,* 731 S.W.2d 84, 90 (Tex.Crim.App.

9

1987).

Here, the record reflects that both Zarya and Macee were forcefully taken from their homes, and while taken to different locations, (the desert and Appellant's house) in both cases they were isolated from anyone who could help them. After Appellant had each woman in his car, he restrained each of them, Zarya by pinning her head and neck against the window and Macee by grabbing her face. Appellant used derogatory terms towards both women; physically assaulted each woman; ripped off their clothing; and in each case forcefully penetrated their vaginas with his fingers or his hand.[3] We find there are sufficient similarities between the charged and extraneous offenses to make the 2008 extraneous offense probative of Appellant's intent with respect to Zarya and to rebut Appellant's theory of fabrication, which placed his intent at issue. We hold that the trial court did not abuse its discretion in admitting the extraneous offense.

Trial courts, when undertaking a Rule 403 analysis, must balance: (1) the inherent probative force of the proffered item of evidence along with; (2) the proponent's need for that evidence against; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

Appellant argues that there was no need for the State to introduce the extraneous offense testimony because Appellant did not testify and no witness testified to contradict the evidence

---

[3] In each case, Appellant also tried to take something that belonged to the complainant: Zarya's cell phone and identification and Macee's purse.

given by Zarya.   We disagree.   As noted above, the record reflects that Appellant did more than assert that he simply "questioned the accuracy of the complainant's information."   Rather, he raised the defensive theories of fabrication and consent.   The evidence of the extraneous offenses was probative as it challenged these theories.   *See Theragood*, 2011 WL 3848840, at *9; *Dial v. State*, 05-09-00741-CR, 2010 WL 4705529, *4 (Tex.App.--Dallas Nov. 22, 2010, no pet.)(not designated for publication).   The first two factors under the 403 analysis do not favor Appellant.

The trial court gave limiting instructions to the jury twice regarding the extraneous evidence testimony, obviating concerns that the testimony would be given undue weight.   *See Dial*, 2010 WL 4705529, at *4 (noting same regarding factors four and five).   Furthermore, the evidence presented was not overly long or graphic.   *Id.*, at *4 (noting same regarding factor six).   The evidence of the sexual abuse may carry emotional weight, however this was mitigated by the multiple limiting instructions and the State's explanation to the jury that the testimony was presented to demonstrate what Appellant had intended to do to the complainant in this case.   *Id.*, at *4 (discussing similar presentation regarding factor three).

We find that the probative value of the extraneous offense testimony was not substantially outweighed by the danger of unfair prejudice and the trial court did not abuse its discretion in admitting the evidence over Appellant's objection under Rule 403.   Appellant's first issue is overruled.

II.     **Error in jury charge in refusing to instruct the lesser-included offense of assault**

Appellant's second issue asserts error by the trial court in failing to charge the jury on the lesser offense of Class A misdemeanor assault.   Appellant requested that such an instruction be given, but the request was denied by the trial court.   Specifically, Appellant made the following

11

request:

> We're requesting the lesser included offense of unlawful restraint and the lesser included offense of pure assault – simple assault Class A misdemeanor assault. And the reason for that is State's Exhibit No. 52. [Appellant's] statement says, 'I slapped her. I did not sexually assault her. That's all I did. I didn't sexually assault her,' but he admitted to assault. So he's entitled to it based on their evidence that they put in to a charge of simple assault.

There are three distinct criminal offenses contained in Section 22.01(a)(1)-(3) of the Penal Code, based on the statutory definitions of simple assault.[4] *McKithan v. State*, 324 S.W.3d 582, 591 (Tex.Crim.App. 2010). Bodily-injury assault under Section 22.01(a)(1) is a Class A misdemeanor. *Landrain v. State*, 268 S.W.3d 532, 536 (Tex.Crim.App. 2008). Assault by threatening another with bodily injury under Section (a)(2) and offensive-contact assault under Section (a)(3) are Class C misdemeanors. *See* § 22.01(a)(2), (3).

Appellant requested that the jury be instructed on "simple assault Class A misdemeanor assault," which he reasserts in his brief. Appellant did not request an instruction based on offensive-contact assault under Section 22.01(a)(3). However, later in his brief, Appellant argues that his conduct was equivalent to an offensive-conduct assault. Appellant argues that:

> The conduct element of sexual assault, penetrating the vagina with his finger, includes the conduct element of assault by causing physical contact with the complainant and contact by penetration with the finger, and contact by penetration or contact that Appellant knew or should have reasonably believed that the complainant would have regarded as offensive or provocative. *See id.* § 22.01(a)(3).

Appellant requested that the jury be instructed on the lesser-included offense of "simple assault Class A misdemeanor assault," or in other words, assault under Section 22.01(a)(1) only. As Appellant did not raise the issue of offensive-contact assault under Section 22.01(a)(3) to the

---

[4] *See* § 22.01(a)(1)(bodily-injury assault); § 22.01(a)(2)(assault by threatening another with imminent bodily injury); § 22.01(a)(3)(offensive-contact assault).

12

trial court, Appellant failed to preserve error regarding the trial court's omission of a lesser-included offense based on offensive-contact assault and we will not consider that argument. *See McKithan v. State*, 01-08-00222-CR, 2009 WL 1562883, *4 (Tex.App.--Houston [1st Dist.] June 4, 2009)(mem. op., not designated for publication), *aff'd* 324 S.W.3d 582 (Tex.Crim.App. 2010), *citing Kelley v. State*, 845 S.W.2d 474, 479 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd)("As appellant made no request for the instruction on the lesser included offense, we are not to consider it on appeal.").

However, we must consider Appellant's argument that the trial court erred by not including bodily-injury assault in the jury charge as a lesser-included offense of sexual assault. Appellant argues that the record reflects "evidence of assault by intentionally, knowingly and recklessly penetrating [Zarya's] vagina and by striking her in the head," and that the jury could have found that the vaginal penetration was reckless, supporting the *mens rea* of simple assault. We disagree.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex.Crim.App. 2007). The lesser offense must first come within Article 37.09 of the Texas Code of Criminal Procedure, that is that "[a]n offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX.CODE CRIM.PROC.ANN. art. 37.09(1)(West 2006). This inquiry is a question of law and does not depend on the evidence to be produced at trial, but is performed through comparing the elements of the offense as they are alleged in the indictment with the elements of the lesser-included offense. *Hall*, 225 S.W.3d at 535-36. If the offense is properly a lesser-included offense, the next step is to determine whether there was sufficient evidence at trial to have required the court to submit the lesser-included offense to the jury. *Hall*, 225 S.W.3d at 528.

Bodily-injury assault is committed when a person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse . . . ." TEX.PENAL CODE ANN. § 22.01(a)(1)(West 2011). A person commits the offense of sexual assault if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." TEX.PENAL CODE ANN. § 22.011(a)(1)(A). A sexual assault under § 22.011(a)(1)(A) is made without consent if, *inter alia*, "the actor compels the other person to submit or participate by the use or physical force or violence." TEX.PENAL CODE ANN. § 22.011(b)(1).

The indictment provides in Count I, paragraphs A through C, that Appellant did intentionally and knowingly abduct another person, by secreting and holding the complainant in a place where she was not likely to be found (the desert), with the intent to violate and sexually abuse her; that he did intentionally and knowingly abduct another person, by secreting and holding the complainant in a place where she was not likely to be found (the desert), with the intent to terrorize her; and that Appellant intentionally and knowingly abduct another person, by secreting and holding the complainant in a place where she was not likely to be found (the desert), with the intent to inflict bodily injury on her, constituting the offense of aggravated kidnapping.[5] Count II of the indictment provides that Appellant did knowingly and intentionally cause the penetration of the sexual organ of complainant by means of Appellant's finger, without the consent of complainant, by use of physical force and violence.

As noted by the Court of Criminal Appeals in *McKithan*, the "settled case law" supports decisions that an allegation of "physical force and violence" in an indictment for sexual assault "is

---

[5] Paragraphs A through C directly relate to the statutory language for the offense of aggravated kidnapping. *See* TEX.PENAL CODE ANN. § 20.04(a)(1) and (4)(West 2011).

not functionally equivalent to an allegation of bodily-injury" and that the State is not required to prove bodily injury to establish "physical force and violence" in an aggravated sexual assault indictment.[6] *McKithan*, 324 S.W.3d at 590. We find the *McKithan* reasoning applicable to the case before us. *See, e.g. Williams v. State*, 02-06-454-CR, 2008 WL 623805, *1 (Tex.App.--Fort Worth Mar. 6, 2008, no pet.)(mem. op., not designated for publication)(holding that assault bodily injury is not a lesser included offense of attempted sexual assault); *White v. State*, 03-01-00616-CR, 2002 WL 1804893, *3-4 (Tex.App.--Austin Aug. 8, 2002, pet. ref'd), *cert denied*, 555 U.S. 999, 129 S.Ct. 494, 172 L.Ed.2d 365 (2008)(same); *Moore v. State*, 01-94-01225-CR, 1995 WL 623028, *2-4 (Tex.App.--Houston [1st Dist.] Oct. 19, 1995, pet. ref'd)(not designated for publication)(same, noting that the proper inquiry is to look only at the facts the State was required to prove to establish the statutory elements of the offense charged).

In order to establish sexual assault, the State was required to prove the statutory elements of § 22.011(a)(1)(A) and (b)(1) of the Penal Code, none of which require a showing of "bodily injury," as asserted by Appellant. Because the element of bodily harm was not an element which the State had to prove to established the charged offense of sexual assault, bodily-injury assault is not a lesser-included offense. *Moore*, 1995 WL 623028, at *4. The first step of the

---

[6] The *McKithan* court provides a number of cites to support the proposition that "physical force or violence" is not synonymous with "bodily injury": *Wisdom v. State*, 708 S.W.2d 840, 843 n.3 (Tex.Crim.App. 1986)(the terms "force" and "violence" are "synonymous when used in relation to assault, and include any application of force even though it entails no pain or bodily injury and leaves no mark"); *Brown v. State*, 576 S.W.2d 820, 822-23 (Tex.Crim.App. 1978)(defendant compelling complainant to submit to sexual intercourse by holding a gun to her head sufficient to show force and threats); *Trejo v. State*, 242 S.W.3d 48, 50-52 (Tex.App.--Houston [14th Dist.] 2007)(aggravated assault not lesser-included offense of charged aggravated-sexual-assault offense because serious bodily injury was not a "fact required" to establish the "physical force and violence" and "threatening to use force and violence" allegations in the indictment), *overruled on other grounds, Trejo v. State*, 280 S.W.3d 258 (Tex.Crim.App. 2009); *Edwards v. State*, 97 S.W.3d 279, 291 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd)(explicit verbal threats and physical injury are not required to prove that a defendant compelled the victim's participation in a sexual assault by physical force and violence)(and cases cited); *Gonzales v. State*, 2 S.W.3d 411, 414-16 (Tex.App.--San Antonio 1999, no pet.)(defendant compelling the complainant to submit to sexual intercourse by laying on top of the complainant and preventing her from moving sufficient to show physical force and violence).

lesser-included offense examination, is not met.  *Hall*, 225 S.W.3d at 528.  We need not reach the second prong of the test.  Appellant's second issue is overruled.

### III.  Error in refusing to instruct on mitigation defense

Appellant's final issue asserts that the trial court erred during the punishment phase by failing to instruct the jury on the mitigation defense of voluntary release in a safe place, as provided in the Texas Penal Code § 20.04(d)(West 2011).  The trial court had initially included such an instruction however, following an objection by the State, the trial court sustained the State's objection and removed the instruction.  In reading the charge to the jury, the trial court did not give Appellant's requested instruction.

Appellant argues that "the complainant was allowed to leave about a mile from her house and near residential houses," where she received aid.  Appellant argues that he was not "coerced by police or others" into releasing the complainant and there was "no potential for the complainant to be caught in a police crossfire."  Appellant argues that because the complainant was able to walk home where she was assisted by the police and her father, that she was released in a safe place.  We disagree.

Appellant cites *Harrell v. State*, 65 S.W.3d 768, 772-73 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd) and the factors listed by that court that are relevant to a "safe release" determination.  However, *Harrell* supports the trial court's decision in the instant case.  The *Harrell* court noted that the appellant, "in order to avail himself of the mitigating effect of Section 20.04(d), must first have performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.'"  *Harrell*, 65 S.W.3d at 772, *citing Wiley v. State*, 820 S.W.2d 401, 411 (Tex.App.--Beaumont 1991, no pet.).  Such a release "must have occurred in a place and manner which realistically conveyed to [the victim] that she was then freed

16

from captivity and in circumstances and surroundings wherein aid was readily available." *Id.*

Texas courts have long held that a kidnap victim's escape from captivity does not entitle a defendant to an instruction on the issue of "voluntary release in a safe place." *Ex parte Chandler*, 182 S.W.3d 350, 355 & n.18 (Tex.Crim.App. 2005); *Harrell*, 65 S.W.3d at 772-74; *Gaither v. State*, 04-10-00548-CR, 2011 WL 3915820, *4-5 (Tex.App.--San Antonio Sept. 7, 2011, no pet.)(mem. op., not designated for publication)(holding that appellant was not entitled to "safe release" instruction where there was no evidence that appellant "took any affirmative act to *release*" the victim).

In the instant case, the record does not reflect that Appellant "released" Zarya. Instead, the record shows that Zarya escaped while Appellant was touching himself. The record does not reflect a "safe release," but instead an "escape." The trial court did not err in denying Appellant's proposed instruction. Appellant's final issue is overruled.

## CONCLUSION

Having overruled each of Appellant's issues, the judgment of the trial court is affirmed.


August 15, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

17