**AFFIRMED; Opinion Filed October 13, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01039-CR

### OLIVER BATTIE JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 265th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1212860-R

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Evans

Appellant Oliver Battie, Jr. appeals from the judgment adjudicating him guilty of sexual assault. In three issues, appellant asserts that: (1) the evidence is legally insufficient to support the conviction; (2) the trial court abused its discretion when it permitted the complaining witness to testify about appellant's prior incarceration during the guilt/innocence phase because it was an irrelevant extraneous offense; and (3) the trial court abused its discretion when it admitted the complaining witness's testimony about appellant's prior incarceration because of the danger of unfair prejudice outweighed any probative value. Finding no merit in appellant's arguments, we affirm the trial court's judgment.

# I. BACKGROUND

Appellant was indicted for sexually assaulting his niece. At trial, complainant testified that in December 2012, she was a nineteen-year old student and home visiting family for the holidays after completing her first semester of college. On December 23, 2012, complainant visited her aunt at her apartment. Appellant is married to complainant's aunt. Complainant and her aunt ran errands together, got dinner, and came home to eat and watch TV. Complainant spent the night on the couch as it was a one-bedroom apartment. Complainant's aunt went to bed but appellant remained in the living room watching TV with complainant. Complainant testified that appellant sat across from her and made her feel uncomfortable because she thought he was "messing with his self" by "touching his privates." Complainant went to bed and woke up the next morning as her aunt and appellant were leaving for work. Appellant came home first around 2 or 3 p.m. on December 24, 2012 and sat down across from complainant in the living room. Complainant testified that she texted her friend, Ashanti Jones, because she felt uncomfortable being alone with appellant at the apartment. Complainant asked Jones if she could come get her but Jones did not have a car.

Complainant then testified that appellant asked her to call her aunt. Appellant took the phone away from her and asked his wife what time she was coming home. After getting off the phone, appellant asked complainant if she knew when his birthday was and she replied "I don't know." Complainant testified that appellant said "[y]ou going to make uncle whoop you, when is my birthday, you know the answer." Appellant kept this up for a while and complainant stated that she was still uncomfortable and started texting her friend again. Appellant then took complainant's pants off and complainant testified that she said "no" and "kind of push [sic] him." Complainant testified that appellant then took of her underwear and put his penis in her vagina. Complainant stated that she was crying, scared, and did not know how to react or what to

do. Complainant testified that appellant put his penis in her four separate times and that he did so without her consent. Complainant further testified that she was scared because she knew appellant had been to jail before and that there was a period of time when he was not around the family. After appellant stopped, complainant testified that he said "[w]hat is wrong with you? Wipe your face before your aunt come home. I'm going to tell her that it's your fault." Complainant then put her pants back on and went to the restroom to wash her face and calm down. Appellant then drove her home, and complainant took a shower. Jones picked complainant up after receiving a text that appellant had raped her. Jones testified that complainant was "freaking out, crying, shaking." Jones's mother called complainant's mother who drove complainant to the hospital. Complainant spoke with police officers, and a sexual assault exam was performed.

The jury found appellant guilty of sexual assault, and appellant elected for the trial court to assess punishment. Appellant pled not true to the enhancement allegation. The trial court found the enhancement allegation to be true and assessed punishment as life imprisonment. After the trial court overruled appellant's motion for new trial, appellant timely filed this appeal.

## II. ANALYSIS

### A. The Evidence Was Sufficient to Support the Conviction

#### 1. Standard of Review

Appellant contends the evidence is insufficient to support a finding of guilt for the offense of sexual assault. When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon

–3–

the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

### 2. Analysis

A person commits the offense of sexual assault if the person intentionally or knowingly causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus or sexual organ of another person, including the actor. TEX. PENAL CODE § 22.011(a)(1)(C) (West 2011). The indictment against appellant and the subsequent jury charge both contained similar definitions of sexual assault.[1] Although the Texas Penal Code provides for eleven different possibilities of how a sexual assault may occur without the consent of the other person, the indictment did not define the term "without consent." *See* TEX. PENAL CODE § 22.011(b)(1)–(11) (West 2011). The jury charge, however, stated that the sexual assault would be "without consent" if "the actor compel[led] the other person to submit or participate by the use of physical force or violence." *See id.* § 22.011(b)(1).

Appellant argues that the State failed to present sufficient evidence at trial that appellant sexually assaulted the complainant. We disagree. Here, complainant testified that she felt uncomfortable around appellant the evening before the assault when he began masturbating while in the living room alone with her. Complainant also testified that she was already scared

---

[1] The indictment against appellant asserted that appellant "unlawfully then and there intentionally and knowingly cause the contact of the female sexual organ of [complainant's name], hereinafter called complainant, with the sexual organ of defendant, and cause the penetration of the female sexual organ of complainant by any means, including the sexual organ of defendant, without the consent of complainant." The State later struck the phrase "and cause the penetration of the female sexual organ of complainant by any means, including the sexual organ of defendant" from the indictment. The jury charge provided that a person commits a sexual assault if "he intentionally or knowingly causes the sexual organ of another person, by any means, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ."

of appellant because she knew he had been to jail before. The day of the assault, appellant threatened to "whoop her" because she didn't know the date of his birthday. When appellant attempted to remove her pants and underwear, complainant testified that she pulled her knees to her chest. Complainant testified that she said "no" and tried to push him away. Complainant further testified that appellant put his penis in her vagina four separate times and that he did so without her consent. Complainant began crying and felt like she was "stuck there." Further, the notes from the sexual assault examination provide as follows: "Patient notes that she was at her aunt & uncle's home alone with her uncle. Notes that her uncle sat on the couch next to her and started rubbing her legs. He then removed her jeans. Patient reports saying 'no' and trying to push him away. He then put his penis in her vagina."

A sexual assault lacks consent if, among other possible factors, the actor compels the other person to submit or participate by the use of physical force or violence. *See id.* There is no requirement that a certain amount of force be used, only that it is used. *Edoh v. State*, 245 S.W.3d 606, 609 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Viewing the evidence in the light most favorable to the verdict, the evidence shows that complainant was afraid of appellant because of his prior conviction and that he threatened to "whoop" her. Furthermore, there is evidence that appellant pulled down complainant's jeans and underwear despite the fact that she resisted, tried to push him away, and said no. We conclude that the evidence viewed in a light most favorable to the verdict shows that a rational juror could have found beyond a reasonable doubt that appellant used force to overcome complainant's resistance and forced her to have intercourse with him. *Id.* at 610 (facts sufficient to support use of physical force where defendant grabbed complainant's arm and pulled her down onto a blanket); *Gonzalez v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.). We overrule this issue.

**B.      The Extraneous Offense Was Relevant and Properly Admitted**

In his second and third points of error, appellant asserts that the trial court abused its discretion when it (1) permitted the complaining witness to testify about appellant's prior incarceration during the guilt/innocence phase because it was an irrelevant extraneous offense; and (2) admitted the complaining witness's testimony about appellant's prior incarceration because of the danger of unfair prejudice outweighed any probative value.

**1.      Standard of review**

A trial court's decision to admit or exclude evidence is viewed under an abuse of discretion standard. *Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard."); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

**2.      Additional facts**

During the direct examination of complainant, the State tried to clarify why she was so scared of appellant. Appellant's counsel asked to approach the bench and the jury was retired so that the matter could be clarified. The State questioned complainant outside the presence of the jury, and she testified that she was scared of appellant because he went to prison for killing someone. The State argued that appellant's prior incarceration was relevant to complainant's state of mind at the time of the offense. The State noted that if the defense argued that this was a consensual act because complainant did not scream or kick, and it wanted to demonstrate that complainant's fear of appellant was relevant and more probative than prejudicial. Appellant's counsel argued that this was an attempt by the State to "open up the fact that the defendant has been to the penitentiary before in front of the jury rather than it actually having a real impact on

what her actions were or weren't on that day." The trial court ruled the testimony admissible since the defense had brought up the act being consensual in its opening statement. Once the jury was brought back in, the following exchange took place as the State continued its direct examination of complainant:

State: And you said that's because you were scared; is that correct?

Complainant: Yes.

State: Can you explain to the jury why you were scared?

Complainant: Because I know that he had been to jail before.

A few moments later, the trial court then provided this instruction to the jury:

Members of the jury, at this time I wish to instruct you that the defendant's on trial solely on the charge contained in the indictment. In reference to the reference you just heard in regards to the defendant being in jail before, that is admitted solely before you to consider the state of mind of the complaining witness in this case and for no other purpose.

In addition, the jury charge contained the following instruction regarding extraneous offenses:

You are instructed that there is testimony before you regarding other crimes or bad acts other than the one charged in this case. You cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses if any were committed, and even then you may only consider the same in determining the motive, intent, opportunity, knowledge or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

### 3. Relevance

Appellant first argues that the introduction of the extraneous offense was irrelevant. We disagree. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Further, rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith; however, it may be admissible for other purposes such as motive,

–7–

opportunity, intent, preparation, knowledge, or identity. *See* TEX. R. EVID. 404(b); *Williams,* 301 S.W.3d at 687. Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b). *Williams,* 301 S.W.3d at 687.

Here, the State argued that it was using the testimony to disprove appellant's theory that the act was consensual. The State specifically argued that complainant's fear of appellant caused her to not fight or scream. As complainant's testimony had relevance aside from proving appellant's character, the testimony was properly admitted. As such, we cannot conclude that the trial court abused its discretion by finding this testimony relevant and we overrule appellant's second issue.

### 4. Prejudicial

Appellant next argues that even if the evidence was relevant, its probative value was more prejudicial than probative. Again, we disagree.

There is a presumption that relevant evidence will be more probative than prejudicial. *See Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Rule 403, however, allows for the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. When an appellant challenges the admissibility of the evidence under rule 403, the trial court must conduct a balancing test. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). When undertaking a Rule 403 analysis, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative

force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The first two *Gigliobianco* factors involve the probative value of the evidence—how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation coupled with the proponent's need for that item of evidence. *Id.* at 641. As discussed above, the trial court determined that the disputed evidence was probative of establishing complainant's state of mind. Further, the State used the testimony to disprove appellant's argument that the act was consensual. This testimony tended to make it more probable that complainant did not consent to the act. Therefore, these factors weigh in favor of admission of the evidence.

As for the third factor, the evidence at issue in this case is not so inherently inflammatory that they would tend to elicit an emotional response and impress a jury in some "irrational and indelible way." *See Wheeler v. State,* 67 S.W.3d 879, 889 (Tex. Crim. App. 2002). The trial court allowed evidence that had previously been incarcerated, but the jury did not hear any evidence of the nature of the crimes. Complainant told the trial court, outside the presence of the jury, that she was scared of appellant because she knew he went to jail for murder. The trial court, however, limited complainant's testimony to the fact that appellant have been previously imprisoned. As such, this factor weighs in favor of admission of the evidence.

The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the evidence. *See Gigliobianco,* 210 S.W.3d at 641 ("Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues."). As described above, complainant's testimony regarding the appellant's prior

conviction was clear and brief. In fact, her entire testimony consisted of one sentence: "[b]ecause I know that he had been to jail before." Thus, this factor weighs in favor of admission.

The fifth factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* The testimony regarding appellant's prior conviction was not prone to this tendency as it pertained to matters that could be easily understood by a jury. Hence, this factor also weighs in favor of admission.

After completing the balancing test, we conclude that the probative value of complainant's testimony regarding appellant's prior conviction was not substantially outweighed by the danger of unfair prejudice.

Further, even if we had concluded that the trial court erroneously admitted the evidence, appellant's substantial rights were not affected. *See* TEX. R. APP. P. 44.2(b) (nonconstitutional error that does not affect appellant's substantial rights must be disregarded). If error is assumed for purposes of this analysis only, we proceed to conduct a harm analysis. *See Taylor v. State*, 93 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. ref'd) ("If the appellate record in a criminal case reveals nonconstitutional error that is subject to review under Tex. R. App. P. 44.2(b), we do not reverse a judgment of conviction or punishment unless we determine the error is such that it affects the substantial rights of the defendant. In order to properly conduct a harm analysis under Rule 44.2(b), we are to determine whether the error affected a substantial right of the defendant. The Texas Court of Criminal Appeals has opined that, in order to make this determination, we must decide whether the error had a substantial or injurious effect on the jury's verdict."). The court of criminal appeals has determined that substantial rights are not

affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Appellant argues that the testimony about his prior incarceration had a substantial and injurious effect on the jury's verdict. We disagree. As stated above, complainant testified as to the events which took place on December 23 and 24, 2012. She made only one mention of the prior incarceration and it was to explain her state of mind at the time of the sexual assault. Further, the trial court gave a limiting instruction following her testimony. In addition, Jones testified about the texts she received from complainant and that she was "freaking out, crying, shaking" following the sexual assault. Finally, Dr. Ackerman, the head of the sexual assault program at Parkland Hospital, also testified regarding the examination and report in this case. Considering the record in its entirety, we have fair assurance that the alleged error did not influence the jury or had but a slight effect. We conclude that the alleged error by the trial court was harmless and overrule appellant's third issue.

## III. CONCLUSION

We resolve appellant's issues against him and affirm the trial court's judgment.


/ DAVID EVANS/
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
141039F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

OLIVER BATTIE JR., Appellant

No. 05-14-01039-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1212860-R.
Opinion delivered by Justice Evans.
Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 13th day of October, 2015.