**Richard T. GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–98–00615–CR.

Court of Appeals of Texas,
San Antonio.

June 30, 1999.

Sherri A. Russell, San Antonio, for appellant.

Daniel Thornberry, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal from a jury verdict finding appellant, Richard T. Gonzales, guilty of sexual assault. *See generally* TEX. PENAL CODE ANN. § 22.011(a) (Vernon 1994 & Supp.1999). The trial court entered judgment and sentenced appellant to fifteen years in the Texas Department of Criminal Justice, Institutional Division. On appeal, appellant asserts that (1) the evidence was both legally and factually insufficient to support the verdict; (2) under *Leday v. State*, 983 S.W.2d 713 (Tex. Crim.App.1998), the present case should be reversed and remanded for a new punishment hearing; and (3) no evidence existed to support the trial court's judgment that appellant is guilty of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. 22.011(a)(2) (Vernon 1994 & Supp. 1999). We affirm the judgment of the trial court as modified.

### Statement of Facts

Appellant was arrested pursuant to charges filed against him for the sexual assault of Linda Smith [1] on May 24, 1997. Smith, a home healthcare provider, alleged that she was raped by the appellant in his

---

1. The name Linda Smith is a pseudonym.

home while caring for his daughter who suffers from Down's Syndrome. Appellant is also ill and suffers from a degenerative neuromuscular disease, Chalks–Marie–Tooth Syndrome.

Appellant and Smith first came into contact with each other on Friday, May 23, 1997 at the Gonzales' home. Smith arrived to care for appellant's daughter. The family and Smith traveled to the Gonzales' church to take family pictures. During that outing, Smith testified that appellant did not need any assistance in walking and even carried his two year-old son up the church steps. However, she noticed that appellant walked with "a little drag." Smith worked for the family until 9:00 p.m. She returned the next day around 2:00 p.m. to care for appellant's daughter while his wife went out for the afternoon and evening. While Smith took care of his daughter, appellant began discussing his marriage. Appellant related that he and his wife were having marital problems, but that he had chosen to remain in the marriage for their children. He related his desire to obtain a divorce and perhaps "get a girlfriend on the side." Smith responded that she did not wish to discuss such matters because she was a professional and considered the matter inappropriate for discussion.

After feeding appellant's daughter, Smith moved the child to the living room to watch television. Smith situated herself on the couch. Appellant was also in the room sitting in a nearby chair. Appellant's son was also in the living room in a playpen. Appellant asked Smith if he could kiss her. She rejected his proposal. Appellant got up and went to the kitchen to get a cold drink. Upon his return, he grabbed Smith's blouse. According to Smith, appellant was standing over her as she sat on the couch. Appellant then "threw" or "laid" Smith back on the couch and got on top of her. Smith was unable to move her left hand because it was pinned by appellant's weight. She managed to hit him with her right hand once. Appellant responded by placing his hand up her dress.[2] Smith tried to push him off. Appellant responded by telling her to "just let him do it, to make it easy, [and] not to fight." Smith was unable to move appellant because she found him to be too heavy. Smith became scared, and screamed once. Hearing the scream, appellant's daughter began to cry. Smith did not yell or scream further because she was afraid of appellant.

At the time of the incident, Smith was under the impression that she was pregnant. Given this thought, she decided not to fight appellant because she did not want to put her child in danger. Appellant then raped Smith.

After the incident, Smith kicked or kneed appellant once. Appellant fell down on top of her again. He told Smith not to tell anyone. Thereafter, Smith went to the bathroom to clean up. While she was in the bathroom, appellant insisted that Smith not tell anyone what had happened. Furthermore, he warned Smith that even if she did tell anyone they would not believe her because of his disability. Upon exiting the bathroom, Smith attempted to console appellant's daughter who had been crying.

Smith tried calling her sons to pick her up, but was unable to reach them. She did not leave the house because she was unfamiliar with the neighborhood. Smith was eventually picked up by her sons around 9:00 p.m. She told them that appellant had attempted to kiss her. Her youngest son became angry and attempted to exit the car. However, he was restrained by Smith who was worried he would do something which would get him into trouble. Smith did not mention the assault. She contacted the Rape Crisis Center the next day at the behest of her sister. After meeting

2. It is unclear from the record whether Smith was wearing a dress or a skirt and blouse. Her testimony was that appellant grabbed her "blouse" and placed his hands under her "dress."

with a San Antonio Police Department officer and having her statement taken, Smith was transported to the hospital for a physical examination.

Appellant was arrested and indicted on charges of sexual assault. Appellant pled not guilty, and a jury trial was had on the matter. The State's evidence against appellant included Smith's testimony, a light gray t-shirt recovered by investigators from appellant's home which, after analysis, revealed smudges or stains with a substance consistent with lipstick, and DNA analysis results which were consistent with appellant's genetic profile. After its deliberations, the jury returned a verdict of guilty. Punishment was assessed by the trial court at fifteen years incarceration.

### Legal and Factual Sufficiency

■ In his first issue, appellant asserts that the evidence was legally and factually insufficient to support his conviction. Specifically, he asserts that there is no evidence to prove the required element of physical force or violence.

In reviewing a legal sufficiency challenge, we view the entire body of evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Williams v. State, 937 S.W.2d 479, 482–3 (Tex.Crim.App.1996). This standard is the same for both a direct and circumstantial evidence case, and the prosecution need not exclude every other reasonable hypothesis except the guilt of the accused. See Johnson v. State, 871 S.W.2d 183, 186 (Tex.Crim.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994).

In reviewing a challenge to the factual sufficiency of the evidence, we must view all the evidence without regard to whether the evidence is favorable to the State or the appellant. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We consider all of the evidence equally, being appropriately deferential to the fact finder's determination. See id. at 133. Following such a review, we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See id. at 135. While we must review the evidence on both sides, we are required to show appropriate deference to the trier of fact by not substituting our judgment for theirs. See De Los Santos v. State, 918 S.W.2d 565, 569 (Tex.App.—San Antonio 1996, no pet.). Furthermore, conflicts in the testimony are for the jury to resolve. See id.

In Texas, a person commits the offense of sexual assault when they intentionally or knowingly cause the penetration of the female sexual organ of another without her consent. TEX. PENAL CODE ANN. § 22.011(a) (Vernon 1994 & Supp.1999). The use or threat to use physical force or violence against another renders the act non-consensual. TEX. PENAL CODE ANN. § 22.011(b) (Vernon 1994 & Supp.1999). In the instant case, appellant was indicted in the alternative for both contact and penetration of Smith's sexual organs and for "knowingly and intentionally compelling Smith to submit and participate by the use of physical force and violence."

Appellant contends that the fear experienced by Smith was not a direct result of appellant's use of force or violence. Rather, appellant argues that the fear experienced by Smith was a result of her concern for her child. Appellant contends that the act of merely laying on top of Smith was not indicative of using physical force or violence. Appellant cites Jiminez v. State, 727 S.W.2d 789, 791–92 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd), for his argument. In Jiminez, the victim had consumed a large amount of alcohol prior to being sexually assaulted. She attempted to search for her boyfriend on the Rice University campus. Unable to find him,

she went to the music building. Eventually, she passed out in a darkened room. She awoke to find someone touching her in the vaginal area. She said and did nothing. Instead, she feigned being asleep. The incident was only the first of many that night. The assailant, a university police officer, would leave and return to the room periodically after receiving calls. Each time, he would touch her with his finger. The victim remained silent during each incident, each time pretending to sleep. She finally "awoke" when appellant attempted to have intercourse with her. The court held the evidence to be insufficient because there was no communication whatsoever between the appellant and the victim. *Jiminez*, 727 S.W.2d at 792. There simply was no evidence supporting the use of physical force. *Id.*

Unlike *Jiminez*, there is evidence in the record in the instant case to support the existence of force. Appellant speculates that Smith's fear was induced by her concern for her child and not a direct result of his use of force or violence. We disagree, and hold that sufficient evidence exists in the record to support the use of force by appellant.

■ Sexual assault is defined by the attacker's compulsion, not by the victim's resistance. *Wisdom v. State*, 708 S.W.2d 840, 842–43 (Tex.Crim.App.1986); *Bannach v. State*, 704 S.W.2d 331, 332–33 (Tex. App.—Corpus Christi 1986, no pet.) The degree of physical resistance by a victim does not render the evidence insufficient to prove the lack of consent. *See Barnett v. State*, 820 S.W.2d 240, 240 (Tex.App.— Corpus Christi 1991, pet. ref'd). Rather, the issue is whether sufficient evidence exists to show appellant compelled the victim's submission by actual force. *See id.* The facts in each individual case determines whether force was used. *Smith v. State*, 719 S.W.2d 402, 403 (Tex.App.— Houston[1st Dist.] 1986, no pet.).

■ Smith testified that appellant "threw" or "laid" her back on the couch. He then laid on top of her preventing her from moving. Because of his weight, Smith was simply unable to move. There is no requirement that a certain amount of force be used, only that it is used. *See* TEX. PENAL CODE ANN. § 22.011(b) (Vernon 1994 & Supp.1999). When viewing this evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found the essential elements, including the use of force, of sexual assault beyond a reasonable doubt.

Implicit in appellant's argument is that other evidence was presented to suggest that he is physically incapable of having committed the offense charged due to his disability. In his statement to police, appellant denied touching Smith. His wife, Martha, testified that her husband was incapable of sexually assaulting an individual. His physician, Dr. Lionel Roger, described him as partially disabled. However, Dr. Roger could not say that appellant was incapable of exhibiting force. Finally, his home healthcare provider described him as a "sweet man."

The State's evidence included the testimony of Edward Cruz, a Bexar County Sheriff's deputy who arrested appellant at a local flea market. Cruz had been working off-duty as a security officer at the flea market. He observed that appellant was walking without any assistance and pushing his son's stroller. Cruz arrested appellant with some physical incident.

Karen Frey, the nurse who examined Smith, testified at trial. A physical examination revealed bruises on Smith's arms. Frey also observed redness and abrasions to the walls of Smith's vagina. She testified that these injuries were consistent with forced intercourse. She also observed Smith's demeanor; she continued to look down while speaking, was monotone and avoided eye contact. Based on her experience of examining rape victims, Frey testified that Smith's demeanor was consistent with that of a rape victim. As part of the examination, vaginal swabs were taken by Frey for the purpose of

testing for semen. These swabs were then tested.

Dr. Gustavo DeLeon, a forensic serologist with the Bexar County Forensic Science Center ("BCFSC"), testified regarding the DNA tests conducted on the swabs obtained by Frey. He compared the genetic results obtained from the swabs with results from blood samples taken from both appellant and Smith. He found spermatozoa, or sperm cells, on the swabs. The genetic composition of the sperm cells matched appellant's genetic profile.[3]

James Garcia, senior trace analyst with BCFSC, testified that tests were conducted on the t-shirt recovered by police. After examining samples under the microscope and chemically treating them, Garcia concluded that the samples were consistent with lipstick extracts.

Under a factual sufficiency review, the fact finder is recognized as the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). As the reviewing court, we do not sit as the "thirteenth juror." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Given this standard, the jury was within its power to reject, in whole or in part, the testimony that appellant was physically capable of sexual assault. Taking all the evidence into consideration, we do not find that the jury's verdict of guilty was so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong. Accordingly, appellant's first issue is overruled.

## DeGarmo Doctrine

In his second issue, appellant argues that he was placed into the "cruel trilemma" of deciding whether or not to admit his guilt during the punishment phase of trial. *See Leday v. State,* 983

S.W.2d 713, 723–24 (Tex.Crim.App.1998) (describing the "cruel trilemma" a defendant is placed in with the application of the *DeGarmo* doctrine). He asserts that by refusing to admit guilt during punishment he ran the risk of receiving a stiffer punishment from the trial court for failing to show any remorse. However, by refusing to admit guilt he was able to maintain his sufficiency issue for appeal. In other words, appellant contends that he chose to deny the charges against him for the purpose of preserving his issue on appeal and circumvent the application of the *DeGarmo* Doctrine. *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.1985). Appellant alleges the harm in the present case was two-fold; (1) he would have been denied the right to an appeal had he admitted guilt and (2) by refusing to admit guilt he was denied the right to probation. *See* Tex.R.App. P. 44.2(b).

Appellant presents a novel application of the *DeGarmo* doctrine which states that a defendant waives any challenge to the sufficiency of the evidence *when he admits guilt during the punishment stage of trial. DeGarmo,* 691 S.W.2d 657, 661 (Tex.Crim. App.1985); *see McGlothlin v. State,* 896 S.W.2d 183, 186 (Tex.Crim.App.1995), *cert. denied,* 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995) (reaffirming DeGarmo). In the present case, appellant did not testify during the guilt/innocence phase of trial, but did testify during the punishment phase. Appellant, however, never admitted to sexually assaulting Smith at any time during the course of the punishment phase. Nonetheless, he asserts that he was forced into the "cruel trilemma" as termed by the Texas Court of Criminal Appeals' recent opinion in *Leday v. State. Leday,* 983 S.W.2d at 723–724. As such, appellant asserts he was harmed in that his right to appeal and right to probation were substantially harmed by his decision to refuse to admit guilt in light of *DeGarmo.* The State, on the other hand, con-

---

3. Dr. DeLeon testified that the frequency of such a match was 1 in 595,000 Caucasians, 1 in 403,000 in Southwestern Hispanics, and 1 in 1,130,000 in Southeastern Hispanics.

tends that *DeGarmo* is inapplicable given the fact that appellant never admitted to the offense.

In light of *Leday* and the Texas Court of Criminal Appeals' most recent opinion of *Reyes v. State*, 994 S.W.2d 151 (Tex.Crim. App.1999), we must agree with the State.[4] However, we do not believe these cases are applicable to the case at bar for three reasons. First, it is axiomatic that any application of *DeGarmo* is triggered by the fact that the defendant admitted his or her guilt for the offense charged during punishment. *See also McGlothlin*, 896 S.W.2d at 189. Without the admission of guilt, appellant could not have waived an error which allegedly occurred in the guilt/innocence phase of trial. Second, even assuming that *DeGarmo* would apply absent an admission of guilt, there is no evidence in the record to indicate that appellant took into account the ramifications of *DeGarmo*, and based his decision to deny the charges against him on these ramifications. Third, we believe appellant improperly relies on dicta. In referencing the "cruel trilemma" of *DeGarmo*, the Court of Criminal Appeals was attempting to distinguish the act of admitting guilt in the punishment phase from the entry of a voluntary guilty plea. This was the analogy employed by the *DeGarmo* court to supply a basis for its decision. *DeGarmo*, 691 S.W.2d at 661. In *Leday*, the Court of Criminal Appeals stated the following:

> The decision whether to testify is made even less voluntary by the cruel trilemma in which the defendant is placed. If the defendant testified truthfully and admits guilt, *DeGarmo* waiver results. If defendant testified untruthfully and denies guilt, the consequences are exposure to punishment for aggravated perjury and of more immediate consequence, an increased punishment on account of perjury. *Cf. United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (sentencing guidelines which requires increased sentence for defendant's perjury in denying guilt at trial does not violate constitutional right to testify on his own behalf). And if the defendant does not testify, the opportunity is lost for the defendant to give the sentencer information that only the defendant can provide.

*Leday*, 983 S.W.2d at 723–24.

■ How could appellant in this case have been denied the right to appeal when he never admitted guilt? Clearly, the answer to this question was that he was not.[5] Therefore, the real issue, in the present case, is whether appellant was somehow given a stiffer sentence (e.g. denied probation) solely on the basis that he refused to admit guilt, or specifically, his failure to show remorse.

■ The trial court assessed punishment at fifteen years incarceration with no probation. We review the granting of probation, where statutorily available, by an

---

**4.** It is clear that with *Leday* and *Reyes*, the Texas Court of Criminal Appeals has abrogated, at the very least, the DeGarmo Doctrine, by calling into question its broad application to errors occurring at the guilt/innocence phase of trial. Clearly, appellate courts are no longer precluded the ability to review issues asserting error at guilt/innocence phase despite the defendant's admission of guilt during punishment. *Leday*, 983 S.W.2d at 725 (permitting the appellate court to review the trial court's decision to admit evidence that was illegally seized); *Reyes*, 994 S.W.2d at 153 (holding appellant did not waive the trial court's error in dismissing a juror and permitting appellant to be convicted by a jury of less than twelve jurors).

**5.** We note that the *DeGarmo* Doctrine has consequences where the trial court has committed reversible error at the guilt/innocense phase. As noted by the Court of Criminal Appeals in *Leday*, "[i]f there was no reversible error, the *DeGarmo* waiver is inconsequential." *Leday*, 983 S.W.2d at 723. As we noted above in our address of appellant's first issue, the trial court did not commit reversible error in the present case. Therefore, we are somewhat perplexed by appellant's assertion that his right to appeal was harmed by not admitting his guilt. Thus, the focus of our inquiry turns to the denial of probation.

abuse of discretion of the standard. *Flournoy v. State,* 589 S.W.2d 705, 707 (Tex.Crim.App.1979). During the punishment phase, the trial court heard testimony that appellant had abused his wife in the early part of their marriage. Other testimony was adduced that appellant has experienced a problem with a previous home healthcare worker. The specifics of this problem were not revealed during punishment. In closing, defense counsel noted that appellant did not have a prior criminal history and that he was fully cooperative with the police. Given the sum of the testimony heard at punishment, the trial court had enough evidence before it to adequately assess punishment in light of appellant's conviction. We do not find that the trial court abused its discretion.[6] Accordingly, we overrule appellant's second issue.

### Reformation of Judgment

Appellant correctly asserts, and the State concedes, that the judgment incorrectly states appellant was charged with the offense of sexual assault under § 22.011(a)(2) of the Texas Penal Code. This section of the code references the sexual assault of a child. TEX. PENAL CODE ANN. § 22.011(a)(2) (Vernon 1994 & Supp. 1999). As there is no evidence in the record to support that offense, we modify the judgment of the trial court to reflect the offense for which appellant was convicted. *See* TEX.R.APP. P. 43.2.

### Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed as modified.

---

**6.** Based on the trial court's statement before assessing punishment, remorse was *only one* factor, granted an important one, which it considered before assessing punishment. The root of appellant's complaint is that he was not granted probation. Therefore, he would have us extend *Leday* to send the present case back for a new punishment hearing. However, nothing in the record suggests that if it were sent back and appellant admitted his guilt he would be given probation. This is mere speculation and not a basis to find an abuse of discretion.