

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00174-CR

RANDALL JAMES ORGAIN                                        APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM 271ST DISTRICT COURT OF WISE COUNTY
### TRIAL COURT NO. CR17333

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Randall James Orgain appeals his conviction for sexual assault, for which he was sentenced to five years' imprisonment. *See* Tex. Penal Code Ann. § 22.011(a)(1) (West 2011). In a single issue, Appellant argues that the

---

[1]*See* Tex. R. App. P. 47.4.

evidence is insufficient to prove that he knew that the complainant had not consented. We will affirm.

## II. FACTUAL BACKGROUND[2]

### A. The Incident

On April 27 and 28 of 2013, Appellant and Jane[3] were not dating; they were just good friends. When Appellant showed up unexpectedly in Jane's driveway on April 27, 2013, she was so irritated that she had to go inside and "cool off" for three hours. Appellant said that he was in town for his father's funeral, and Jane ultimately allowed Appellant to come in and spend the night at her house. Jane thought that Appellant would leave the next morning after eating breakfast. Instead, Appellant put on a mask and sexually assaulted Jane, despite her protests and efforts to resist him.

After Appellant left, Jane called a friend and told him what had happened. Jane drove herself to the hospital in Bridgeport, where Investigators from the Wise County Sheriff's Office met her. Jane told them that she had been raped. Because the hospital in Bridgeport does not perform sexual-assault examinations, the investigators transported Jane to Denton Regional Hospital.

---

[2]Because the complainant recanted at trial, we set forth the testimony of the witnesses to whom she originally reported the incident.

[3]To protect the complainant's identity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982); 2nd Tex. App. (Fort Worth) Loc. R. 7.

## B. The Sexual-Assault Exam

Joanie Sackett, a sexual-assault nurse examiner at Denton Regional Hospital, testified that she performed a sexual-assault exam on Jane five and a half hours after the incident at issue had occurred.[4] As part of the examination, Sackett wrote down Jane's medical history, which included that the only medication Jane was taking was a medication for high blood pressure; Jane did not report any mental illness issues to Sackett. Sackett listed Jane's emotional condition as "tearful, anxious, and cooperative."

Sackett testified at trial regarding Jane's description of the incident as follows:

> [Jane] had told me that she was in her room on her bed and that -- she told me that the person had come in and told her there was a robbery and ran to the room and laid down on the bed and was looking out the window, said she laid down and tried to see and told him she didn't see anything. And she said when she turned over, that he had a mask on. And she asked what that was, and he started kissing her and he was kissing her all over. She said she tried to pull him off, and he pulled her shirt up, said that she was -- that he was biting her nipples, and she kept telling him to stop, and that he had ripped her pants off and had oral sex on her.
>
> She said she kept trying to squeeze his head with her legs to get him off, but he kept doing it harder, stated that he penetrated her with his penis in her vagina, stated that he had a hoody on but no pants at the time. She said he had a hard time keeping it hard, and she had related to me that she was not sure if he had ejaculated.
>
> And then she asked him if she could be done, and he had responded to her, when I'm done with you, bitch. And she told me

---

[4]Jane told Sackett that the incident occurred around noon; the exam occurred around 5:25 p.m.

3

she had scratches on her chest from him clawing my clothes off to try to get them off.

Sackett further testified that Jane told her that she had beat on Appellant's head and had punched him in the chest but did not know if she had injured him.

During the physical exam, Sackett observed that Jane had a seven-centimeter scratch right below her left breast, a four-centimeter scratch in the middle below the chest area, petechiae on both wrists, a six-centimeter abrasion below her hip area, and a three-centimeter abrasion at the top of her right buttock. Sackett explained that based on her training and experience, petechiae are usually the result of pressure that is applied, which causes blood vessels to break and then appear on the skin. Sackett did not observe any trauma to Jane's genitalia and testified that is very normal.

Based on obtaining a history from Jane and examining her body, Sackett testified that a sexual assault had occurred. Sackett did not get the impression that the sexual intercourse described by Jane was the result of role playing or some type of fantasy.

## C. The Investigation

Investigator Ashleigh Portales, a forensic investigator formerly with the Wise County Sheriff's Office, testified that she met Jane at the hospital in Bridgeport at 2:30 p.m. on April 28, 2013, and transported her to Denton Regional Hospital. Investigator Portales testified that Jane was very cooperative and was very angry at what had happened to her. Jane became tearful at times

but tried to keep control of her emotions. Investigator Portales testified that Jane did not present the incident as a role-playing game or a fantasy.

Investigator Michael Nagle with the Wise County Sheriff's Department testified that he went to the hospital in Bridgeport on April 28, 2013, and met with Jane. Jane told Investigator Nagle that Appellant had "raped" her, and he noted that he had used quotes in his report to indicate that was Jane's wording. At the hospital in Bridgeport, Jane told Investigator Nagle that she had been receiving calls and texts from Appellant. While Investigator Nagle was transporting Jane from the hospital in Bridgeport to the hospital in Denton, he asked her if she would be willing to make a controlled phone call to Appellant, and she agreed. During the phone call, Appellant apologized for raping Jane.[5] Investigator Nagle testified that throughout the seven hours that he spent with Jane on the day of

---

[5]A recording of the phone call was admitted into evidence and played for the jury. A transcript of the phone call was also admitted into evidence and contains the following:

> [Appellant]: sorry
>
> [Jane]: what you sorry for Randy, what are you sorry for?
>
> . . . .
>
> [Appellant]: sorry for taking advantage, I'm sorry for roughing you up for having sex with you, I'm sorry because I shoulda never did that, to anybody.
>
> [Jane]: what were you thinking?
>
> [Appellant]: I'm sorry for pretty much raping you

the incident, she never said that this was a consensual encounter or that it was role playing. He said that if Jane had described the incident as being consensual, the incident would not have been investigated as a sexual assault.

Sergeant Carolyn Copeland, an investigator with the Wise County Sheriff's Department, testified that she interviewed Jane at Jane's home two days after the incident. Sergeant Copeland testified that Jane was "a bit shooken up" but was able to talk with her about the incident and was able to complete paperwork, including an emergency protective order. Sergeant Copeland testified that Jane was afraid that Appellant would return to her home unannounced and assault her again because he had shown up unannounced on the day of the incident. After hearing Jane's rendition of the events and listening to a recorded call between Jane and Appellant, Sergeant Copeland issued an arrest warrant for Appellant.

Over four months later on September 3, 2013, Jane completed a form containing confidential victim contact information. Jane indicated on the form that as a result of being sexually assaulted, she had experienced nightmares, fear of being alone, and anxiety; she distrusted people; and she suffered from depression. Jane further indicated on the form that some of the reactions she had checked on the form she had experienced prior to the incident but that they were "more extreme" after the incident and that people close to her felt less secure about leaving her alone.

## D. Jane's Trial Testimony

When Jane was called to the stand to testify at trial, she testified that she and Appellant had consensual sex on April 28, 2013. Jane testified that she and Appellant had participated in role-playing games on prior occasions and that she and Appellant had talked at some point about playing "burglar, break-in, rape-victim games" but that she did not expect that to occur on April 28, 2013; she said that Appellant had decided to do the robbery theme on his own. The prosecutor clarified, "So you're saying today that it was just role playing?" Jane replied, "Yes, consensual role playing, yes. It takes two." The prosecutor asked Jane when she had decided that this incident was role playing rather than a sexual assault, and she replied that she had determined it was role playing when she saw Appellant wearing the hoody and the mask. Jane admitted that at trial was the first time that she had told the prosecutor that the sex was consensual.

Jane also admitted that she had told the police that she had been sexually assaulted by Appellant but explained that when she told the police that she had been sexually assaulted, she did not believe that she had been sexually assaulted. Jane further admitted that she had told the nurse that she had been sexually assaulted; when the prosecutor questioned Jane line-by-line about the statements Jane had told the nurse on April 28, 2013, Jane repeatedly testified that "[i]f it's on that paper [Sackett's notes], sir, yes, then that's what I said." But Jane testified that at the time she gave Sackett her description of the incident, Jane knew that the incident was role playing. When the prosecutor questioned

7

Jane about the effects she had listed as a result of being sexually assaulted, she explained that the effects she had experienced were not part of the role playing and that she would not play that role again "if that's what it causes."[6]

Jane agreed that her statements to the investigators and to the nurse reflected that the incident was not consensual. She said, "But I didn't take into account the day and the whole week and the whole situation and all that, and getting on and off the medication[7] and the whole bit that I just got the -- I made a mistake. Yes. I don't know what else to say." Jane testified,

> I'm contesting that this was not sexual assault or rape, that it was -- that it -- I apologize that it's even come to this point. It was a bad day. I piled everything on top of him because he has big enough shoulders he can handle it all. You know, there's a lot of other things in the background that's going on, you know, just with life in general. And someone said, oh, he raped you, or, you know, sexual assault, go to the hospital. Well, I jumped off on the bandwagon, took off down to the hospital, and here we are.

Jane admitted that she had been in contact with Appellant since the case had been pending; that they had "shared information"; and that when she was subpoenaed to show up for trial, she asked how to make the case go away.

### E. Defense Investigator

Cami Sandifer, the investigator appointed by the trial court to assist the defense, testified that Jane had told her that she did not believe that she had

---

[6]She later testified that the reactions were related to medications she was taking.

[7]Jane testified that prior to the incident, she had been to a counseling center and was in the process of finding the right psychological medications.

been sexually assaulted. Sandifer first spoke with Jane on December 17, 2014, and Jane said that she did not want an innocent man to go to jail. Three days later, Jane gave Sandifer a written statement, stating that she did not believe that she had been sexually assaulted. Sandifer agreed that Jane's recantation came seventeen months after Appellant was arrested and indicted.

## F. Trial Outcome

After hearing the above evidence, the jury found Appellant guilty of sexual assault as charged in the indictment. After hearing testimony during punishment and reviewing the presentence investigation report, the trial court found the enhancement paragraph to be true and sentenced Appellant to five years' imprisonment.

## III. SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant argues that the evidence is insufficient to prove that he knew that Jane had not consented.

## A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

9

*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

## B. Applicable Law

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. Tex. Penal Code Ann. § 22.011(a)(1)(A). A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence. *Id.* § 22.011(b)(1).

Sexual assault is defined by the attacker's compulsion, not by the victim's resistance. *Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio

10

1999, no pet.) (citing *Wisdom v. State*, 708 S.W.2d 840, 842–43 (Tex. Crim. App. 1986)). The degree of physical resistance by a victim does not render the evidence insufficient to prove the lack of consent. *Id.* Moreover, the mere fact that a defendant did not see resistance or hear any outcry during the encounter is no evidence that the complainant consented to the act. *Hawkins v. State*, 509 S.W.2d 607, 608 (Tex. Crim. App. 1974).

When a witness recants prior testimony, it is up to the factfinder to determine whether to believe the original statement or the recantation. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). A factfinder is fully entitled to disbelieve a witness's recantation. *Id.*

### C. Analysis

In his brief, Appellant concedes that there is some evidence in the record indicating that Jane did not consent to the sexual encounter in question but argues that he believed at the time of the encounter that Jane had consented and did not realize that Jane had objected to his advances until after the encounter had concluded. Appellant contends that he did not know Jane's resistance "wasn't simply her way of participating in the role-play scenario, at least until after the event was over."

Here, as set forth in detail above, the record contains the testimony of the two investigators and sexual-assault nurse examiner who met with Jane just hours after the incident, as well as the testimony of the investigator who met with Jane a few days after the incident. During the interviews, Jane presented as

11

tearful and was consistent in her statements to the investigators and the nurse that the sexual acts Appellant performed on her were without her consent; she never mentioned role-playing. Sackett recounted for the jury the version of the events that Jane had told her during the sexual-assault exam, including that she had tried to pull Appellant off of her, kept telling him to stop, kept trying to squeeze his head with her legs, beat on his head, and punched him in the chest. Sackett further testified regarding the scratches, petechiae, and bruising that she had discovered on Jane during the exam and explained that petechiae are the result of pressure (physical force) being applied. Although Appellant claims on appeal that the results of the sexual-assault examination show that Jane's injuries were consistent with the role-play activity and that he had interpreted Jane's resistance as part of her role during the role-playing, rather than as a lack of consent, Appellant stated during the phone call shortly after the incident that he had raped Jane, which was consistent with Nurse Sackett's conclusion that a sexual assault had occurred. *See Hawkins*, 509 S.W.2d at 608.

Appellant also argues in his sole issue that no evidence of extraneous offenses was offered during the guilt phase and that there was no evidence of threats or coercion. A sexual assault, however, can be proved without evidence of extraneous offenses and does not require evidence of threats or coercion. *See generally* Tex. Code Crim. Proc. Ann. art. 38.07(a) (West Supp. 2015) (stating that a conviction for sexual assault may be supported by the uncorroborated testimony of the complainant if she informed any person, other than the

12

defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred); Tex. Penal Code Ann. § 22.011(b)(1) (stating that sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence).

Appellant further argues that Jane was consistent in her testimony at trial that the incident was consensual. In convicting Appellant of sexual assault, the jury made a credibility determination to believe the statements Jane made shortly after the incident to the sexual-assault nurse examiner, Investigator Nagle, Investigator Portales, and Sergeant Copeland, as well as her statements during the controlled phone call, instead of her recantation seventeen months after Appellant's arrest. As set forth above, we must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Murray*, 457 S.W.3d at 448–49.

Thus, viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant knew the sexual assault was without consent. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Chambers*, 805 S.W.2d at 461 (holding evidence sufficient to support conviction for indecency with a child because jury was entitled to disbelieve recantation and because additional circumstantial evidence from other witnesses tended to corroborate complainant's prior videotaped statement); *Martines v. State*, 371 S.W.3d 232, 242 (Tex. App.—Houston [1st

13

Dist.] 2011, no pet.) (holding evidence sufficient to support conviction for sexual assault despite victim's recantation); *Briseno v. State*, 293 S.W.3d 644, 647 (Tex. App.—San Antonio 2009, no pet.) (holding evidence sufficient to show that victim did not consent and that appellant committed sexual assault based on victim's injuries, including bruising to her neck, her emotional state after the assault, and testimony that she had desperately resisted appellant's advances). We overrule Appellant's sole issue.

## IV. CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 18, 2016