

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00159-CR
07-18-00160-CR
07-18-00161-CR
07-18-00162-CR
07-18-00163-CR

JESUS GONZALEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court Nos. 5465 (Counts I–V), Honorable Roland Saul, Presiding

December 11, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Jesus Gonzalez, appeals his five convictions for sexual assault. Through his sole issue, he questions the sufficiency of the evidence underlying the convictions. He asserts "that he was consistent in his contentions that the sexual acts performed between he and [the victim we call C.] were all consensual, except for the anal penetration" which penetration "was a mistake and not a knowing or intentional act."

We affirm.

We recently described the pertinent standard of review in *Ocanas v. State*, No. 07-17-00313-CR, 2018 Tex. App. LEXIS 7449, at *4–6 (Tex. App.—Amarillo Sept. 6, 2018, no pet.) (mem. op., not designated for publication).  It requires us to consider all the evidence in the light most favorable to the verdict and determine if that evidence, coupled with reasonable inferences therefrom, would enable a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  *Id.* at *5.  In applying it, we must remember that the fact-finder is the sole judge of a witness's credibility and of the weight to be given to that testimony; consequently, we defer to those decisions.  *Id.*  And, if the record contains evidence that supports contradictory conclusions, we also presume the fact-finder resolved any such conflicts in favor of the verdict.  *Id.*

Next, the State indicted appellant for committing five distinct acts of sexual assault.  One commits sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent.  TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (West Supp. 2018).  Statute further provides when a sexual assault is without consent.  Of the eleven ways described in § 22.011(b), the two pertinent ways here are found at § 22.011(b)(1) and (2).  The former states that an assault is without consent when the actor compels the other person to submit or participate by the use of physical force, violence, or coercion.  *Id.* § 22.011(b)(1).  The latter defines the absence of consent as when the actor compels the other person to submit by threatening to use force or violence and the other person believes that the actor has the present ability to execute the threat.  *Id.* § 22.011(b)(2).

We must remember that a threat need not be verbal.  It may also be implied from the actor's conduct.  *See Martinez v. State*, No. 01-07-00983-CR, 2008 Tex. App. LEXIS

2

7849, at *7–8 (Tex. App.—Houston [1st Dist.] Oct. 16, 2008, pet. ref'd) (mem. op., not esignated for publication) (involving an implied threat of another beating if victim did not submit to sexual advances by defendant).

Additionally, when force comes into play, there is no requirement that a certain amount be exerted; the evidence need only show that it was used. *Fernandez v. State*, No. 07-16-00441-CR, 2018 Tex. App. LEXIS 4697, at *6–7 (Tex. App.—Amarillo June 26, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.)). Nor is the extent of the victim's resistance, if any, of import in assessing the absence of consent. *See id.* at *4. Instead, the attacker's compulsion, as opposed to the victim's resistance, is determinative. *See id.* Indeed, in *Fernandez*, we held non-consent via the application of force to be sufficiently established through evidence that the appellant grabbed the victim's leg, pulled her leg close to him, and pushed her shoulders so that she lay on the couch. *Id.* at *7. Having said this, we turn to the evidence of record.

Again, appellant does not dispute that he committed the sexual acts alleged in the indictment. Instead, he posits that the evidence illustrated C. consented to all but the anal penetration and that the latter was merely accidental. Upon viewing the record in a light most favorable to the verdict, we must disagree with him.

The assaults occurred during a first date between appellant and C., who lived in a rural community. Appellant picked her up from her house, drove to Amarillo, and there took C. to dine and visit a local mall. By that time, appellant had acquired C.'s purse and cell phone from her and locked them in the trunk of his car.

3

The two then left Amarillo and drove to Hereford, Texas, to watch a movie. While in the theater, appellant placed his hand down C.'s pants and penetrated her vagina with his finger. She did not consent to his conduct. Rather, she held her hand out and told him to stop several times. So too did she unsuccessfully attempt to push away his hand. Nonetheless, he persisted, telling her that she would "get used to it." Because nothing like that had happened to her before, she grew scared of appellant, did not know what to do, and felt unable to walk away from him. Thereafter, appellant became "mean-like" and told her that they were leaving the movie. She followed, but asked that he take her home. Appellant refused her request and again placed his hand down her pants and digitally penetrated her vagina multiple times while parked in the lot outside the theater. Upon completing his efforts there, appellant then drove to a nearby aquatic center where he again digitally penetrated her, despite her pleas for him to stop. After informing C. that it had been four years since he "had been with a woman," appellant decided to leave that location.

It had begun to rain as he drove through various areas around Hereford and eventually down a dirt road to a grain elevator, all the while ignoring her continued requests to take her home. Upon arriving at the elevator, appellant digitally penetrated C.'s sexual organ, ignored her continued requests to stop, directed her to remove her pants and under garments, and ordered her to climb into the car's back seat. She complied "because I was – I was scared and didn't know what he – didn't know what he was going to do to me." Appellant partially disrobed himself, met C. in the rear seat, removed her shirt and bra, inserted his penis in both her sexual organ and anus, eventually licked her vagina, and murmured that "[t]his is what I've been needing for so

4

long." During the course of these events, C. yelled for him to stop and kicked at him. However, these efforts did not prevent him from entering her sexual organ or anus, C. testified.

The aforementioned evidence is more than ample to permit a rational fact-finder to find, beyond reasonable doubt, the elements of sexual assault. Beginning with the removal of C.'s purse and cell phone from her control and ending with his arrival at the grain elevator and ultimate comment that he had been needing sex for such a long time, one could reasonably infer that appellant planned his activities that night. Furthermore, in appellant rebuffing both C.'s efforts to push his hand away as he digitally penetrated her as well as her kicking and yelling as he assaulted her in the back seat of the car, one can also reasonably infer that he exerted force over C. to achieve his goal. It is rather unfathomable to conclude that appellant could complete his assaults without force while his victim yelled for him to stop and kicked at him.

Other evidence also illustrates that appellant inserted his finger into C.'s anus during the assaults. Thus, he violated her rectum in two different manners. From his so violating her in two different ways, a fact-finder could reasonably infer, beyond reasonable doubt, that his penetration of C.'s anus with his penis was a calculated act, rather than a mistake or mere accident.

The foregoing evidence is matter that the fact-finder could deem credible. In considering it, the jury was free to reject contradictory testimony; and, it apparently did so, given its verdict. It is not our place to ignore the way in which it weighed the evidence and resolved factual disputes. Instead, we defer to those decisions of the jury.

5

In sum, legally sufficient evidence supports the five convictions for sexual assault. Thus, we overrule appellant's issue and affirm those convictions and judgment manifesting them.

Brian Quinn
Chief Justice

Do not publish.