**AFFIRMED and Opinion Filed July 30, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-01296-CR**

**SRINIVAS EADHA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-83015-2015**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

Srinivas Eadha appeals his conviction for sexual assault. In a single issue, appellant contends the evidence is legally insufficient to support the jury's verdict. We affirm the trial court's judgment.

### Factual Background

In April 2015, appellant purchased the stables at which the complainant, L.C., worked as a riding instructor. A few weeks after making the purchase, appellant asked L.C. to go to dinner with him to discuss promoting her to the position of barn manager. Without discussing it with her beforehand, appellant took L.C. to Hooters.

After dinner, appellant drove L.C. back to the barn and asked her to step into the office to further discuss the management position. L.C. stated that as soon as they got into the office,

"everything changed." According to L.C., appellant closed the door, turned around, put his hands on her hips and began pulling her towards him. L.C. pushed back and told appellant it wasn't appropriate and there was a line between business and personal relationships they needed to maintain. Appellant responded that they had to trust each other and physical contact was an important part of growing together as a "barn family." L.C. stated appellant put his hands under the back of her shirt and tried to get them down the back of her pants. Appellant also told L.C. he expected her to be his "work wife," which L.C. understood to mean more of a personal or physical relationship than a normal work relationship.

When appellant began to move his hands towards her breasts, L.C. moved to try to stop him and appellant pulled her towards him and kissed her. L.C. pushed back and told him to let her go. When L.C. told appellant that someone would be there any minute to do the evening check on the barn, he finally let her go. L.C. then went to her car and drove home.

L.C. stated she didn't tell anyone what had happened because the barn was "her whole life" and she didn't want to "lose everything." In addition to working there, L.C. also boarded her horse at the barn and she stated she had no way to move him to another stable. Although L.C. was married, her husband was temporarily living somewhere else. L.C. said she did not want to tell her husband about what had happened with appellant because she didn't want a confrontation that would cause her to lose her job.

The next day, L.C. went to work and tried to stay away from appellant. Appellant sent L.C. a text message asking her if she was angry with him. She responded she was not, but that she was busy. At the end of the day, appellant texted her asking her to text him when she got home. L.C. did so and said she was going to bed. Appellant then repeatedly requested to come by, stating he wanted to talk to her and that it wouldn't take long. L.C. ultimately agreed and gave appellant the gate code to her apartment complex.

When appellant arrived, L.C. let him inside. L.C. believed they could talk about what had happened and set some clear boundaries. She thought this would allow them to move on and not have to talk about it again. L.C. stated she told appellant what had happened was not appropriate because they were both married and a personal relationship was not a good idea. According to L.C., appellant argued with her saying he bought the barn because he saw her there and knew they were supposed to be together. He further told her that when he bought the barn, she came with it. She responded that it didn't work that way. After some time, appellant appeared to agree with L.C., and she believed they were done.

Appellant then moved towards L.C. on the couch. She thought he was getting up to leave, but instead, appellant got on top of her and pushed her down. Appellant forced L.C.'s legs apart with his hand and knee. He then put his hand down L.C.'s pants and penetrated her vagina with his fingers. L.C. stated that, while this was occurring, she was pushing up on his collarbone and trying to close her legs, but she could not move because she was pinned down by his weight. She also stated that appellant's mouth was on hers. When it appeared to L.C. that appellant was going to take his pants off, she told him she couldn't go that far but she promised him she would have sex with him the next time they saw each other. L.C. stated she told him this because nothing else was working and she just wanted him to leave. Appellant then left her apartment.

The next day, L.C. went to work. She stated she did not stay home because she was scared to lose everything she had worked for and she did not know what appellant was capable of. At the end of the day, appellant approached her and said he wanted to come back to her apartment that night. When L.C. told him not to and that she was tired, he told her to rest and that he would come over afterward. L.C. went home, packed a bag, and drove to Austin to stay with her cousin. She sent appellant a text saying she had a family emergency.

While L.C. was in Austin, appellant texted her saying he felt "guilty" that he "made [her] leave for this trip" and that he "didn't mean to hurt [her] at all." When L.C. returned from Austin four days later, she confided in a friend about what had happened and ultimately decided to go to the police. L.C. gave the police a written statement describing the assault. The police then took photographs of bruises on L.C.'s legs that she said were caused by appellant forcing her legs open.

Several days later, L.C. met with police detective Courtney Noel. L.C. told Noel that appellant had been calling and texting her, trying to speak with her. Noel had L.C. call appellant and they recorded the conversation. During the phone call, appellant apologized to L.C. for hurting her and told her he had cried about what happened in her apartment. He said he had gotten excited and "had no control," but he realized he "should not be doing any of those things." Later in the conversation, appellant suggested that, if L.C. had said "no" he would have stopped and, because she didn't, he didn't "put any brakes on [himself]." Appellant was arrested the next day and charged with sexual assault.

At trial, the only witnesses to testify were L.C. and Detective Noel. The defense cross-examined both women extensively. The defense argued L.C.'s sexual encounter with appellant was consensual and she had ulterior motives for accusing him. The defense also suggested that the multiple bruises on L.C.'s legs were caused by horseback riding, masturbation, and/or L.C.'s use of a dance pole in her apartment, which appellant's counsel characterized as a "stripper pole." After hearing the evidence, the jury found appellant guilty of sexual assault and assessed punishment at three years' confinement. The sentence of confinement was suspended and appellant was placed on community supervision for a period of five years. This appeal followed.

**Analysis**

In a single issue, appellant contends the evidence is legally insufficient to support his conviction. Specifically, appellant argues the State failed to produce evidence he committed the

–4–

offense intentionally or knowingly because there was "no evidence presented which showed beyond a reasonable doubt that appellant realized his sexual advances were unwelcome or unwanted until actual sexual activity may have occurred."

When reviewing a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We do not resolve conflicts of fact, weigh evidence, or evaluate the credibility of the witnesses as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). The factfinder is the sole judge of the witnesses' credibility and their testimony's weight. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). Each fact need not point directly and independently to the guilt of the appellant as long as the cumulative force of all the incriminating circumstances is enough to warrant conviction. *See Kennemur v. State*, 280 S.W.3d 305, 313 (Tex. App.—Amarillo 2008, pet. ref'd). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Id.* We review all of the evidence in the case regardless of whether it was erroneously admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The testimony of a victim, standing alone, is sufficient to support a conviction for sexual assault. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990).

The indictment in this case alleged that appellant intentionally or knowingly caused the penetration of L.C.'s sexual organ by means of his finger without her consent. The victim of a

sexual assault is not required to resist; sexual assault is defined by the attacker's compulsion and not by the victim's resistance. *Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.). The fact that the defendant did not see resistance or hear an outcry during the encounter is no evidence that the complainant consented to the act. *Hawkins v. State*, 509 S.W.2d 607, 608 (Tex. Crim. App. 1974).

Sexual assault is a nature-of-conduct offense. *Huffman v.* State, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008). A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. *Id*. § 6.03(b). Knowledge and intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Stahle v. State*, 970 S.W.2d 682, 687 (Tex. App.—Dallas 1998, pet. ref'd). In reviewing the sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense. *Guevara*, 152 S.W.3d at 49.

In this case, the evidence showed that, the evening before the incident in question, L.C. rejected appellant's sexual advances and told him she did not want anything other than a professional relationship with him. On the night of the incident, L.C. reiterated that she did not want to have a personal relationship with appellant because it was inappropriate. Accordingly, appellant was made aware that L.C. was not interested in any type of physical relationship with him. Despite this, appellant proceeded to pin L.C. down with his body and force her legs open, leaving bruises, before penetrating her vagina with his finger. While this was happening, L.C. was attempting to push appellant off of her. Afterwards, appellant repeatedly apologized to L.C., saying he felt guilty and that he hadn't meant to hurt her. Appellant told L.C. he "lost control" and had cried about what had happened. Conduct on the part of a person accused of a crime

subsequent to its commission that indicates a consciousness of guilt is strong evidence he committed the act with which he is charged. *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.).

After reviewing the record as a whole, we conclude the evidence is legally sufficient to support the jury's conclusion that appellant acted intentionally or knowingly with respect to the nature of his conduct. We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
171296F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

SRINIVAS EADHA, Appellant

No. 05-17-01296-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-83015-2015.
Opinion delivered by Justice Reichek.
Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 30, 2019