

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00170-CR

———————————————

ENRIQUE ANGUIANO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1356100D

---

Before Sudderth, C.J.; Gabriel and Wallach, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Pursuant to a plea bargain, Appellant Enrique Anguiano pleaded guilty to possession with intent to deliver a controlled substance of four grams or more but less than two hundred grams, namely cocaine. *See* Tex. Health & Safety Code Ann. § 481.112(d). In accordance with the terms of the plea bargain, the trial court sentenced Anguiano to eight years of deferred adjudication community supervision. The State subsequently filed a petition to proceed to adjudication, alleging that Anguiano had violated his community-supervision conditions by committing a sexual assault at a spa where he worked as a massage therapist. Anguiano pleaded not true to the allegations, and the trial court, after conducting a hearing, found that the allegations were true and sentenced Anguiano to twenty-five years' confinement. In his sole issue, Anguiano argues that the evidence was insufficient to establish that he committed the alleged sexual assault. We will affirm.

## I. BACKGROUND OF THE SEXUAL ASSAULT

At the hearing on the State's petition to proceed to adjudication, the complainant, J.K., testified that she visited a spa in Colleyville on December 12, 2018.[1] J.K. had first visited the spa in June 2018, and she had subsequently visited the spa approximately once a month leading up to her December visit. J.K. testified that she

---

[1]To protect the complainant's anonymity, we will use initials to refer to her. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

did not have a "regular" massage therapist but that she would use whichever therapist the spa provided.

On her December visit, J.K. was led into the massage room by her assigned massage therapist. J.K. testified that she did not know the name of her assigned therapist, and she could not recall what he looked like.[2] She testified that upon entering the room, she had a brief conversation with the therapist about changing her massage package from a bamboo massage to a package that included a Swedish massage, facial, and body wrap. After that conversation, the therapist left the room so that J.K. could get situated on the massage table. J.K. then removed her clothes and lay face down on the massage table with a sheet and blanket covering her body.[3] The therapist then reentered the room and began massaging J.K.'s back. J.K. testified that the back massage lasted approximately thirty to thirty-five minutes and that it went "normally."

Following the back massage, the therapist told J.K. to turn over so that she was "face up." J.K. then turned over, and a towel was placed over her face. The therapist began massaging J.K.'s shoulders, and he then "put his hands on [her] breast" under the sheet. J.K. testified that she "stiffened up" following that contact, and then "this

---

[2]Although she could not recall what her massage therapist looked like, J.K. referred to the therapist during the hearing as "he" and "him."

[3]J.K. testified that during her previous massages at the spa, she had likewise been unclothed on the massage table covered by a sheet and blanket.

3

person was on top of [her]." J.K. stated that she did not remember what happened while the therapist was on top of her, and she did not remember whether she was still covered by the sheet and blanket when the therapist was on top of her. J.K. testified that she remembered "warmth in [her] legs" which she believed to be the therapist's semen. She also remembered pushing the therapist in an attempt to get him off of her. She testified that the therapist then left the room, and the worker who was to perform the facial entered. J.K. told the worker to "call the manger and to call the police because [she] had been raped."

The police were notified, and Officer Nicolas Garcia of the Colleyville Police Department arrived at the spa. Officer Garcia arrested Anguiano—who had been identified as the suspect of the sexual assault—and transported him to jail. Officer Garcia testified that during the transport, Anguiano admitted to having sex with J.K. but that Anguiano stated that the sex was consensual. According to Officer Garcia:

> [Anguiano] said the sex was consensual; he said that he was massaging the victim's neck while he was on her back over by the blanket; he said that the victim began moaning loud. [Anguiano] said that he tried to ignore the moans but the victim grabbed his penis through his pants and allegedly told [Anguiano], in quotes, "fuck me." [Anguiano] then said he began having consensual sex with the victim and he attempted to stop having sex with her when she allegedly told him, ["]Don't stop,["] before the victim allegedly grabbed him by the penis and reinserted it into herself.

4

## II. ADJUDICATION OF GUILT

### A. Standard of Review

A trial court's determination on a motion to adjudicate is reviewable in the same manner as the determination on a motion to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.108(b); *Church v. State*, No. 02-17-00049-CR, 2018 WL 4183076, at *1 (Tex. App.—Fort Worth Aug. 31, 2018, no pet.) (mem. op., not designated for publication). We review an order revoking community supervision under an abuse-of-discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels*, 202 S.W.3d at 763–64. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona*, 665 S.W.2d at 493. If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

## B. The Evidence is Sufficient to Support a Finding that Anguiano Sexually Assaulted J.K.

The State alleged in its petition to proceed to adjudication that Anguiano had committed the new offense of sexual assault.[4] A person commits sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent. Tex. Penal Code Ann. §22.011(a)(1)(A). The Penal Code defines "consent" as "assent in fact, whether express or apparent." *Id.* § 1.07(a)(11). A sexual assault is without the consent of the other person if "the actor compels the other person to submit or participate by the use of physical force, violence, or coercion." *Id.* § 22.011(b)(1). The focus of the offense is "on the actor's compulsion rather than the victim's resistance." *Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). "There is no requirement that a certain amount of force be used, only that it is used." *Edoh v. State*, 245 S.W.3d 606, 609 (Tex. App.—Houston [1st. Dist.] 2007, no pet.); *Gonzales v. State*, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.).

In his brief, Anguiano argues that there is insufficient evidence to show that he penetrated J.K.'s sex organ. Alternatively, Anguiano argues that if he did penetrate J.K.'s sex organ, the evidence is insufficient to show that he did so without J.K.'s consent.

---

[4]One of Anguiano's conditions of community supervision was that he not commit any offense against the laws of Texas.

Here, there was evidence that Anguiano intentionally or knowingly penetrated J.K.'s sex organ. While J.K. testified that she did not remember what happened when the therapist was on top of her, and she did not remember whether she was covered by the sheet and blanket when the he was on top of her, she did describe a warmth between her legs that she believed to be his semen, and she told the worker who was to perform the facial that she "had been raped." Moreover, Officer Garcia testified that Anguiano admitted to having sex with J.K. Specifically, Officer Garcia testified that Anguiano told him that Anguiano had been giving J.K. a massage, and that at J.K.'s prompting, Anguiano "began having consensual sex with [J.K.]." Viewing the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court on questions of the credibility of witnesses and the weight to be given their testimony, we hold that the trial court did not abuse its discretion by finding that the State proved by a preponderance of the evidence that Anguiano intentionally or knowingly penetrated J.K.'s sex organ. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493.

There was also evidence that Anguiano's penetration of J.K.'s sex organ was done without her consent. J.K testified that she was lying on her back on a massage table with a towel covering her face when the therapist touched her breast. She stated that she stiffened at this contact, and then the therapist was "on top of [her]." She testified that she pushed the therapist in an attempt to get him off of her. When pressed during cross-examination as to whether she had really pushed the therapist,

7

J.K. testified that she remembered pushing the therapist in the torso with her hands. J.K. also stated that she told the spa's personnel to call the police because she "had been raped." She also testified that she did not consent to "this man doing any of this." Viewing the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court on questions of the credibility of witnesses and the weight to be given their testimony, we hold that the trial court did not abuse its discretion by finding that the State proved by a preponderance of the evidence that Anguiano's penetration of J.K.'s sex organ was done without her consent, i.e., that he sexually assaulted J.K., a violation of the conditions of his community supervision.[5] *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493.

We overrule Anguiano's sole issue.

### III. CONCLUSION

Having overruled Anguiano's sole issue, we affirm the trial court's judgment.

---

[5]Anguiano argues that there is no evidence that he used physical force to compel J.K. to submit to the sexual assault. We disagree. J.K. testified that the therapist—Anguiano—got on top of her while she was lying on a massage table with her face covered by a towel and that she pushed him in an attempt to get him off of her. That testimony provides some evidence that Anguiano used physical force to compel J.K. to submit to the sexual assault. *See Edoh*, 245 S.W.3d at 609 ("There is no requirement that a certain amount of force be used, only that it is used."); *Gonzales*, 2 S.W.3d at 415 (same).

8

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 30, 2020